UNITED STATES of America, Plaintiff–Appellee,

v.

Irej Alex MALEKZADEH, Mary Ann Evans, Thomas Hayward Webb, Defendants–Appellants.

UNITED STATES of America, Plaintiff–Appellee,

v.

Reeve SHAYANFAR, a/k/a Farivar Shayanfar, Defendant–Appellant.

Nos. 86–3614, 87–3315.

United States Court of Appeals, Eleventh Circuit.

Sept. 28, 1988.

Stephen N. Bernstein, Gainesville, Fla. (Court-appointed), for Malekzadeh.

V. Hulslander, O'Connell and Hulslander, Gainesville, Fla., for Evans.

William B. Moffitt, Moffitt & Jones, Alexandria, Va., for Webb.

Huntley Johnson, Lois Agee, Gainesville, Fla., for Shayanfar.

Michael Simpson, George W. Blow, III, Asst. U.S. Attys., Talahassee, Fla., for U.S.

Before ANDERSON and EDMONDSON, Circuit Judges, and ATKINS *, Senior District Judge.

ATKINS, Senior District Judge:

Irej Alex Malekzadeh, Thomas Hayward Webb, Mary Ann Evans, and Reeve Shay-

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

anfar appeal from convictions on various charges of conspiracy to distribute cocaine and heroin, and possession with intent to distribute heroin and cocaine. Finding no error, we AFFIRM.

The appellants Webb, Evans, and Malekazadeh were indicted and tried together. On July 29, 1986, the jury returned guilty verdicts against Webb on all eighteen counts, against Evans on all three counts charged, and against Malekzadeh on fifteen of the sixteen counts with which he was charged. The appellant Shayanfar was indicted separately. His case was initially consolidated with that of Webb, Evans, and Malekzadeh, but was later severed after opening statements. The government filed a superseding indictment and Shayanfar was tried and convicted on three counts that included conspiracy to possess with intent to distribute heroin and using the telephone system to facilitate a felony.

Malekzadeh, Webb, and Evans appeal on numerous grounds that include the trial court's denial of motions to suppress evidence obtained through wire taps, motions for mistrial, denial of Malekzadeh's motion to sever, and denial of Evans' motion for judgment of acquittal. The appellants also assert that the trial court erred when it allowed a witness to use notes during her testimony to refresh her recollection. Evans independently contends that she was penalized for exercising her right to remain silent. The appellant Shayanfar joins in several of the arguments asserted by the other appellants and independently asserts that his second trial violated double jeopardy.

## Factual Background

An investigation of a heroin distribution ring purportedly operating in the Gainesville, Florida area led federal and state agents to the appellants. During the course of the investigation, one of the agents sought an order that would authorize retrieval and recording of the telephone numbers dialed to and from a home occupied jointly by the appellants Webb and Evans. In January of 1986, agents petitioned the court for and were granted an authorization for wire and oral communication intercepts on the Webb/Evans telephone and in February of 1986, made a similar request for the home telephone of the appellant Malekzadeh. The Webb/Evans telephone was monitored, with authorized extensions, from January 13, 1986, through March 12, 1986; Malekzadeh's phone was monitored from February 12 until March 12, 1986. Agents gathered over four hundred conversations from the Webb/Evans and Malekzadeh wiretaps and conducted dozens of surveillances based upon intercepted conversations. The information obtained from the wiretaps and the actual conversations formed the bulk of the government's evidence presented at trial.

In March of 1986, law enforcement officers surveilled the appellant Malekzadeh traveling to San Francisco where he met with two individuals, one of whom was later identified as the appellant Reeve Shayanfar. Malekzadeh arrived in San Francisco in the evening of the first day, remained the following day, and departed early on the third day. Upon arrival in Florida, he was met at the airport by his wife. Approximately twenty minutes after reaching home, Malekzadeh telephoned Webb and arranged a meeting. Malekzadeh left home in his wife's car, the same one in which she had met him at the airport. He met Webb and Evans in an undeveloped subdivision located about one and one half miles from his home, parking driver's door to driver's door. After observing the meeting, the officers arrested the three, recovering $1,275 in cash from the front seat of Webb's car; among the trash on the floor were pieces of paper cut in a fashion typically used to package heroin. Vacuuming the floorboards yielded a substance that later tested positive for heroin. Because Webb had ignored repeated demands to raise his hands and it appeared to the officers that he was doing something under the steering wheel, it was the officers' opinion that Webb tore open a package of heroin that he had received from Malekzadeh, sprinkling its contents over the floorboard of the car. Both Webb and Evans exhibited signs of severe heroin withdrawal after their arrest. No drugs or

money were recovered from the car driven by Malekzadeh.

Malekzadeh was accompanied to his home where he was detained with his wife until the arresting officers could obtain a search warrant, a span of about two hours. After searching the house and Malekzadeh's own car which was parked in the driveway, officers seized a telephone with a wiretap, $87,000 in cash, 114 grams of cocaine, 114 grams of heroin, and two Mercedes Benz automobiles. Malekzadeh's fingerprints were taken from the packages containing the heroin. On the same night, a search of the Webb/Evans residence pursuant to a warrant revealed scales, cutting agents, syringes, and heroin wrappers. Drug evidence had earlier been discovered in their trash. A codefendant, Susan Eichner, testified that she had been consistently purchasing heroin from Webb and Evans for over a year.

On April 3, 1986, Shayanfar was arrested in San Francisco and charged in a separate indictment. He was initially represented by an Assistant Federal Public Defender, Susan Seahorn who filed numerous motions to continue the trial alleging among other things "defense counsel's lack of experience in cases of this nature," and that "the complexity renders Shayanfar's counsel unable to adequately and competently represent her client at this time." Ms. Seahorn also argued to the court during a hearing: "I don't know what I'm doing at this moment. I am learning. I am learning very quickly. But it takes time, and everyone in this case has had a lot more time to prepare." The court heard motions from March 28, 1986, through June 5. Shayanfar's counsel contributed only minimally to the hearings and often did not return to the courtroom after a recess. Despite affidavits to the contrary, Ms. Seahorn spent most of the time between the hearings and the trial out of town.

Jury selection began on June 30. Ms. Seahorn repeated to the jury on more than one occasion: "I'm trying to do a good job, so just bear with me," and identified herself as a public defender on at least two occasions. When the court attempted to

intervene in counsel's repetitious questioning of a potential juror, Ms. Seahorn remarked to the judge, "Well, if you feel like you can do it better...." Ms. Seahorn was threatened with contempt but completed the voir dire without further incident and the jury was empaneled and sworn that evening. On the following day, July 1, the trial began.

In his opening statement to the jury, counsel for the government stated that, although the indictments charged two separate conspiracies, the evidence would show that, in fact, they had arisen out of the same conduct. After his opening statement, Malekzadeh's counsel moved for a mistrial, a motion joined by Shayanfar. After lunch, the court met with Shayanfar, Ms. Seahorn, and Mike Simpson, counsel for the government. The judge asked if Shayanfar was satisfied with the representation that he was receiving and told him that he had a choice of proceeding with the trial represented by Ms. Seahorn, proceeding *pro se*, or being severed and being retried with new counsel. An independent attorney was appointed to provide him with neutral advice concerning his choices. When Shayanfar refused to make a choice, the judge informed him that the trial would continue. At this point, Ms. Seahorn moved to withdraw claiming an invasion of the attorney/client privilege and Shayanfar was now faced with proceeding *pro se* or choosing to sever. He chose the latter and the jury was instructed to disregard any reference that had been made to the defendant Shayanfar. The government filed a superseding indictment and Shayanfar was tried separately and convicted.

## I. ELECTRONIC SURVEILLANCE

The appellant Malekzadeh challenges the denial of his motion to suppress the fruits of the court ordered electronic surveillance on two grounds. Only the appellant Shayanfar joins in these arguments which assert that the wiretaps failed to comply with the court ordered minimization requirement, and that the application for authorization failed to disclose a prior wiretap. The appellant Webb, with whom the other

appellants join, alleges that the 1986 wiretap application was based in part on information obtained from an allegedly illegal search of his home. Webb posits that the Fourth Amendment requires suppression of the information and thus the 1986 application represents "fruit of the poisonous tree."

Review of the trial court's denial of the motion contained mixed questions of law and fact. The latter are accorded the clearly erroneous standard while questions of law are subject to plenary review. *Adams v. Balkcom,* 688 F.2d 734 (11th Cir.1983).

### A. Failure to Minimize

The officers who conducted the wiretap of Malekzadeh's residence intercepted numerous telephone calls between the appellant and his wife. Malekzadeh argues that the interception of marital communications indicates a failure to minimize that is fatal to the fruits of the surveillance. Malekzadeh's argument, however, confuses the failure to minimize, a substantive objection, with assertion of the marital privilege, a procedural question governed by the rules of evidence.

The trial court specifically found that "all of the evidence in this case shows that minimization was in fact diligently followed and that only a handful of calls, some dozen or so out of hundreds were incorrectly monitored for over two minutes. And that of these that are only a second or two after the two-minute interval does not raise itself to a level of showing indifference for suppression of this entire wire."

The Second Circuit, in *United States v. Sotomayor,* 592 F.2d 1219, 1225 (2d Cir. 1979), distinguished between the "right of privacy" and the "evidentiary" dimensions of wiretap regulations. The court recognized that determining whether to admit a wiretap obtained by a state officer acting pursuant to a state court order issued under a state statute required application only of those more stringent state statutory requirements designed to protect an individual's right of privacy as distinguished from procedural rules essentially evidentiary in nature.

When it enacted Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.,* Congress intended that states be free to impose more stringent regulations than those applicable to warrants issued by federal courts. *See* Sen.Rep. No. 1097, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Admin.News 2112, 2187. The Florida wiretap legislation, codified at Fla.Stat. § 934.01 *et seq.,* demonstrates that the Florida requirements are no stricter than those imposed under Title III and, in fact, the language of the Florida statute tracks that of Title III almost exactly. Neither statute explicitly restricts interception of marital communications that otherwise comply with the statutory requirements.

Admission, in federal court of evidence obtained by state officers is governed by federal law. *See e.g., United States v. Butera,* 677 F.2d 1376 (11th Cir.1982); *United States v. Nelligan,* 573 F.2d 251 (5th Cir.1978). Under federal law, the marital privilege does not protect those conversations made in furtherance of a conspiracy. *United States v. Entrekin,* 624 F.2d 597, 598 (5th Cir.1980). At the time of the surveillance, investigation officers believed that Mrs. Malekzadeh was involved in the conspiracy. None of the conversations was introduced at trial. Finding the trial court's application of the federal rules of evidence to the interception of marital conversations to be without error, we affirm that court's denial of the motion to suppress on this basis.

### B. Exclusionary Rule

The appellant Webb argues that a 1980 search of his home pursuant to a warrant was constitutionally infirm and use of information obtained as a result of that search in the support of the 1986 application for a wiretap rendered that application invalid. Although the other appellants join

in this argument, they have shown no basis to contest the search of Webb's home and thus lack standing to challenge its validity *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

In 1980, a neighbor, believing that Webb's home had been burglarized, called law enforcement officers who, after a thorough search of the grounds, entered the home through a second story door that had been left unlocked. Once inside, the officers found drugs and related paraphernalia in plain view. Based on this information and a corroborating affidavit from an informant, the officers applied for and were granted a search warrant. A further and exhaustive search of the house yielded marijuana and grenades. Webb was arrested and eventually pled guilty to a misdemeanor.

In 1986, the agent seeking authorization for a wiretap on the Webb/Evans telephone used this information as a basis to demonstrate Webb's longstanding affiliation with drugs. The trial court found that the agent had relied on information that she gleaned from "public records of which there had been no suppression. And she did no more than to quote the public records and what they contained and what she found as a result of a [validly]—appearing [validly] issued search warrant." The trial court based its decision on the agent's good faith reliance on public records without reaching the question of the validity of the 1980 search warrant. The appellant does not dispute the trial court's factual findings or the court's legal conclusion that the agent acted in good faith reliance on the available information. Because the trial court's factual determinations are subject to the clearly erroneous standard, this court accepts the trial court's undisputed findings that the 1986 application was based upon information contained in public documents and that the agent acted in good faith.

The Supreme Court has recognized a good faith exception to the exclusionary rule that asks whether the offending officers acted in the objectively reasonable belief that their conduct did not violate the fourth amendment. *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The exclusionary rule works as a deterrent to willful conduct that violates individual rights. The Court recognized that, in some circumstances, application of the rule affords none of these protections and stated that "[i]f the purpose of the exclusionary rule is to deter unlawful police conduct then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *United States v. Peltier,* 422 U.S. 531, 542, 95 S.Ct. 2313, 2320, 45 L.Ed.2d 374 (1975).

■ Suppression of the 1986 wiretaps for alleged illegality in the 1980 search of Webb's home would afford none of the deterrence served by the exclusionary rule. The record shows that the 1986 application was devoid of deliberately false or recklessly false information that would provide a sufficient basis to apply the rule. *See Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The agent's conduct in using the information that she obtained from public records, showing the evidence to have been seized pursuant to a search warrant, was objectively reasonable. Excluding the fruits of the wiretap would in no way work to deter the conduct of the officer who relied on public information as a basis for the wiretap application.

## II. DOUBLE JEOPARDY

The appellant Reeve Shayanfar submits that the double jeopardy clause of the Fifth amendment barred his retrial after his first ended in a mistrial. In support he argues that the trial court intentionally provoked the motion for mistrial by its inquiry into the competency of his counsel. After his counsel's motion to withdraw was granted, Shayanfar was faced with no other choice but to proceed *pro se* which, given the complexity of the issues, was no choice, or to sever and be retried with new counsel.

■ The record shows that at the conclusion of the government's opening remarks the appellants moved for severance, a motion joined by the appellant Shayanfar. After Malekzadeh's opening statement and during the noon recess, the trial judge inquired whether Shayanfar was satisfied with his attorney. As grounds for this inquiry the court pointed to Ms. Seahorn's inexperience, lack of time to prepare, antagonism of the jury, disclosure to the jury that she was appointed counsel, and her improper remarks to the court that resulted in a threat of contempt. Given the judge's duty to insure that Shayanfar received effective assistance of counsel, *see McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970), this inquiry was not improper. The record is replete with Ms. Seahorn's exhortations of inexperience and inability to represent her client. While it is true that the judge had the benefit of these facts prior to commencement of the trial, the span of time between jury selection and opening remarks was less than one full day. It is entirely possible to have possession of facts the significance of which are not immediately apparent. In this case, the trial judge reflected less than one day after Ms. Seahorn's performance and improper remarks before the jury, the culmination of her obvious incompetence. Given the facts of this case, the judge acted expediently to protect the appellant's constitutional right to effective representation.

■ Although Shayanfar contends that he had no choice because he was unable to proceed *pro se,* and therefore the principle espoused by the Court in *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), barred his retrial, this does not accurately reflect the facts. In *Dinitz,* the Court recognized that a defendant may be retried after a mistrial has been declared without the defendant's request or consent when there is " 'a manifest necessity for the [mistrial], or the ends of public justice would otherwise be defeated.' " 424 U.S. at 607, 96 S.Ct. at 1080 (quoting *United States v. Perez,* 22 U.S. (9 Wheat) 579, 580, 6 L.Ed. 165 (1824) (Story, J.). At the time of the court's inquiry into Shayanfar's satisfaction with his counsel, he was given a choice to continue with the trial being represented by Ms. Seahorn, to proceed *pro se,* or to be retried with a new attorney. This choice comports with the requirements of *Dinitz* that the defendant retain primary control over the course to be followed. At this stage, Shayanfar had several choices and the ability to select among them. After refusing to make a choice, the court decided that the trial would continue without further interruption. It was not until this point that Shayanfar's counsel moved to withdraw, limiting Shayanfar's choices to proceeding *pro se* or seeking a retrial. The circumstances at this point were sufficient to demonstrate a "manifest necessity" for a mistrial, and therefore Shayanfar's contention of double jeopardy is rejected.

## III. FIFTH AMENDMENT

■ Finally, this court will consider the appellant Evan's assertion that she was penalized for exercising her constitutional right to remain silent. Evans argued that the trial judge vindictively sentenced her to a longer term after she refused to testify against the appellant Webb with whom she had lived for several years and who she considered to be her husband. This argument is unpersuasive because a court is absolutely entitled to consider a defendant's failure to cooperate at the time of sentencing. *Roberts v. United States,* 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980). In *Roberts,* the Supreme Court recognized that the sentencing court needs a method to reward those who had cooperated and to encourage those who might cooperate in the future. The fact that one of Evans' codefendants who cooperated received a lesser sentence is entirely consistent with this policy. The trial court's sentence was within the statutory limit and thus is entitled to deference. Absent illegality, the sentence will be and is affirmed.

Because this court finds that the appellants' remaining arguments lack merit, it declines to address them at length. It is thus the conclusion of this court that the

orders of the trial court from which the appellants appeal be affirmed.