**UNITED STATES of America, Plaintiff,**

v.

**Victor PLESCIA, Frank Bonavolante, Camillio Grossi, also known as Canillo Gross, Camillo Grossi, and Gam, Nickalos Rizzato, Anthony Grossi, Norman Demma, Lizzio Desantis, also known as Lee Lizzio, Kevin Geiger, and Cora Dena Mae Plescia, Defendants.**

**No. 90 CR 463.**

United States District Court, N.D. Illinois, E.D.

Jan. 1, 1991.

Helene B. Greenwald, Asst. U.S. Atty., James P. Fleissner, Asst. U.S. Atty., Chicago, Ill., for U.S.

Joseph Lopez, Chicago, Ill., for Victor Plescia.

Michael C. Goode, Chicago, Ill., for Norman Demma.

Kevin Bolger, Chicago, Ill., for Anthony Grossi.

James Meltreger, Onesto, Giglio, Meltreger, Chicago, Ill., for Frank Bonavolante.

Joseph DiNatale, Chicago, Ill., for Camillio Grossi.

## ORDER

NORGLE, District Judge.

This case arises under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended 18 U.S.C. § 2510, *et seq.* (Title III), which regulates the interception of wire, oral and electronic communications.

Counsel for Anthony Grossi, Victor Plescia, Norman Demma, and Dena Plescia have filed motions to suppress evidence obtained by electronic surveillance. Attorney Lopez, representing Victor Plescia, has also filed a motion "on behalf of all defendants."

The government has filed a voluminous response to all motions. The government's response is accompanied by copies of all orders entered by Chief Judge Grady, who authorized the surveillance, and various other documents and affidavits. The government's response, in dealing with the defendants' motion, contains specific references to these documents.

Distilled, the grounds for defendants' suppression motions are: (1) that the application and supporting affidavit submitted with respect to the November 7 Title III order "fail to set forth facts which allege that normal investigative procedures have failed in the investigation" or "a complete and detailed statement that normal investigative procedures have been tried and have failed or reasonably appear unlikely to succeed if tried" and thus do not meet the requirements of 18 U.S.C. § 2518(1)(c); (2)

that the applications and supporting affidavits for both Title III orders fail to establish the probable cause necessary under 18 U.S.C. § 2518(3) to support the Chief Judge's issuance of the November 7 and December 27 Title III orders;[1] and (3) that the Title III orders were "improperly executed by law enforcement officers."

In response to the defendants' motion to suppress the evidence obtained from the court-authorized electronic surveillance, the government traces the record in great detail. The case involves a drug investigation which began in April, 1989, when the Drug Enforcement Administration (DEA) received information from a cooperating individual. The investigation ended in October, 1989.

The investigation disclosed that after a number of conversations with various defendants, Victor Plescia and Nickalos Rizzato sold 12 ounces of cocaine, in April, 1989, and one kilogram of cocaine, in May, 1989 to undercover agents.

The DEA discovered that Victor Plescia used a mobile phone, number 312/618–4233, and a pager number 312/306–3022, to carry out drug transactions.

Chief Judge Grady on November 7, 1989, issued authorization under Title III for surveillance for thirty days. The surveillance ended December 7, 1989. On December 27, 1989, Chief Judge Grady authorized an extension of the November 7, 1989, order for an additional thirty days. The December 27 authorization ended January 26, 1990. As required, affidavits were submitted by the government in support of the applications for the November 7 and the December 27, 1989, orders.

■ Defendant Plescia asserts a failure to comply with the requirements of § 2518(1)(c) of Title 18 of the United States Code, which provides that each application for Title III order shall include:

a full and complete statement as to whether or not other investigative procedures have been tried and failed or why

they reasonably appear to be unlikely to succeed if tried or to be too dangerous.

The government, however, correctly replies that the Seventh Circuit has held that "[b]ecause subsection (c) of ... [section 2518 of Title 18 of the United States Code] is worded in the disjunctive, the government is required to establish the need for electronic surveillance by demonstrating one of the three alternatives listed [in subsection (c) ]." *United States v. Zambrana*, 841 F.2d 1320, 1329 (7th Cir.1988). The government here chose the last two alternatives, namely, that "other investigative procedures ... reasonably appear to be unlikely to succeed if tried or to be too dangerous." Thus, defendant Victor Plescia's claim that the Title III evidence must be suppressed because the application and supporting affidavit fail to set forth facts alleging that normal investigative procedures have been tried and failed is not founded. In *Zambrana*, 841 F.2d at 1219, the Seventh Circuit clearly stated that:

[the] statute does not require that other investigative procedures actually be implemented before an order may be issued for the interception of wire communications ...: '[i]t is not required that a wire tap be used as a last resort but only that the success of other methods of investigation appear unlikely.'

■ Further, the Seventh Circuit takes the position that " 'the government's burden of establishing its compliance with [subsection 2518(1)(c) ] is not great' and that the requirement that the government exhaust 'normal investigative procedures' be reviewed in a 'practical and common-sense fashion.' " *Zambrana*, 841 F.2d at 1329 (*quoting United States v. Anderson*, 542 F.2d 428, 431 (7th Cir.1976)). Chief Judge Grady determined that the government's application and affidavit for the November 7 order set forth sufficient facts and statements showing that other investigative procedures reasonably appear to be unlikely to succeed or to be too dangerous.

---

1. Defendant Plescia's motion makes reference to three periods of surveillance and to a Title III order issued on October 11, 1989. However, only two periods of Title III surveillance of the Plescia mobile telephone and pager occurred in this case and they were issued pursuant to Title III orders issued on November 7, 1989 and December 27, 1989, by Chief Judge Grady.

This court has reviewed the record and agrees with Judge Grady's finding. The affidavit of Special Agent David Grant, which was incorporated by reference into the government's November 7 application, sets forth in detail the reasons why normal investigative procedures appear unlikely to succeed and would be extremely dangerous. Agent Grant explains that: (1) normal investigative procedures have been successful to some extent but do not seem likely to succeed in furthering all aspects of the investigation, including fully identifying all members of the conspiracy; (2) the CI, who had been useful in the investigation thus far, was unable to furnish information or introductions that would fully identify all the members of the narcotics conspiracy being investigated, and the CI was reluctant to testify for fear of possible physical harm and retaliation from members of the criminal enterprise if the CI's position as a confidential informant became known; (3) use of confidential informants as well as standard undercover techniques would not likely provide useful information on the location of hidden drug caches, proceeds and assets; (4) Agent Grant believed it was virtually impossible to foresee an opportunity for the undercover agent or the CI involved in the investigation to be introduced to Victor Plescia's or Nickalos Rizzato's sources of supply in the conspiracy; (5) extensive surveillance would not lead to complete identification of all members of the conspiracy because narcotics transactions often occur out of public view, and because, based on Special Agent Grant's experience, extensive surveillance conducted in narcotics investigations is often discovered by subjects of the investigation who are themselves conducting surveillance or counter-surveillance, and because Plescia—as indicated in paragraph 28 of the affidavit—claims to have the ability to check license plate numbers of suspected law enforcement vehicles; (6) because one of the subjects of the investigation—Nickalos Rizzato—was a Chicago Police Officer, use of grand jury subpoenas would threaten the investigation because the service of the subpoena might become known to police officers associated with Rizzato and

thus reveal the existence of the on-going narcotics investigation; (7) telephone records, pen registers and computer extractions do not indicate the time, place, or manner of delivery of narcotics or the methods of distribution and do not specify the identity, roles and participation of the persons involved in the calls; (8) search warrants could not be used because the investigating agents did not have any information as to a specific location where narcotics were being concealed and further search warrants would not necessarily achieve the goal of identifying all members of the conspiracy and discovering the methods of distribution.

The movants, without specificity or supporting documents, next assert that the applications and supporting affidavits for the wiretap orders failed to set forth sufficient probable cause in a number of respects, resulting in the violation of the requirements of certain provisions of § 2518 of Title 18 of the United States Code and the violation if the fourth and fourteenth amendments of the Constitution.

Section 2518(3) of Title 18 of the United States Code sets forth the probable cause requirements for Title III authorization that are relevant to defendant's probable cause claims and provides, in pertinent part, as follows:

> Upon such application the judge may enter an ex parte order ... authorizing ... interception of wire, oral or electronic communications ... if the judge determines on the basis of the facts submitted by the applicant that—
>
> (a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in § 2516 of this chapter;
>
> (b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;
>
> \* \* \* \* \* \*
>
> (d) ... there is probable cause for belief that the facilities from which, or the place where the wire, oral, or electronic

**1074**

communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are lease to, listed in the name of, or commonly used by such person.

These statutory probable cause standards set out in § 2518(3) are coextensive with the constitutional requirements of the fourth amendment. *United States v. Leisure*, 844 F.2d 1347, 1354 (8th Cir.), *cert. denied*, 488 U.S. 932, 109 S.Ct. 324, 102 L.Ed.2d 342 (1988). The probable cause standard in the Title III context is the same as that use to obtain ordinary search warrants. *E.g., United States v. Tehfe*, 722 F.2d 1114, 1118 (3d Cir.1983), *cert. denied*, 466 U.S. 904, 104 S.Ct. 1679, 80 L.Ed.2d 154 (1984). Determining whether or not probable cause exists involves "a practical, common-sense decision whether, given all the circumstances set forth …, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). It is improper to focus on isolated aspects of a probable cause showing, artificially separating those aspects from other facts presented to the magistrate. *Id.*, 462 U.S. at 234–35, 103 S.Ct. at 2330. As in many evidentiary questions, the whole of a probable cause showing often is greater than the sum of its parts. Even seemingly innocent behavior might arouse suspicion in light of other circumstances. *See id.* at 243–44 n. 13, 103 S.Ct. at 2335 n. 13. The inquiry into the existence of probable cause raises questions of "probabilities … the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. U.S.*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949); *see also, United States v. Watson*, 587 F.2d 365, 368 (7th Cir.1978), *cert. denied*, 439 U.S. 1132, 99 S.Ct. 1055, 59 L.Ed.2d 95 (1979). Probable cause requires more than bare suspicion, but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false. *United States v. McDonald*, 723 F.2d 1288, 1295 (7th Cir.

1983), *cert. denied*, 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 831 (1984). The Court recognized in *Brinegar* the ambiguity of situations with which the police are often confronted, and consequently noted that the rule of probable cause permits mistakes reasonably made. 338 U.S. at 176, 69 S.Ct. at 1311.

■ The affidavit of Special Agent Grant submitted in support of the application for the first Title III order entered on November 7, 1989 clearly sets forth sufficient probable cause as required by § 2518(3). The affidavit sets forth information obtained from the confidential informant regarding the narcotics distribution activities of defendants Victor Plescia and Nickalos Rizzato and the DEA's undercover investigation of defendant Plescia's narcotics distribution activities, including: (i) conversations between the CI and Victor Plescia during April, May, and October of 1989 regarding narcotics distribution; (ii) conversations in June and August of 1989 between Victor Plescia and undercover DEA agents regarding narcotics distribution; (iii) a conversation between the undercover agent and defendant Lee Lizzio on June 12, 1989, during which conversation Lizzio represented Plescia in negotiations with the undercover agent for the sale of cocaine to the undercover agent. The affidavit also sets forth information based on both CI information and observations by law enforcement officers that defendant Victor Plescia used the mobile telephone and pager for which Title III surveillance was sought to conduct his narcotics distribution business.

■ Furthermore, the affidavit of Special Agent Grant submitted in support of the application for the second Title III order, entered on December 27, 1989, clearly sets forth sufficient probable cause as required by § 2518(3). That affidavit not only incorporated by reference the first affidavit that had been submitted for the first wiretap order, but also set forth Title III and visual surveillance evidence of defendants' narcotics activities that had been gathered during the period of the first wiretap. That evidence showed that defen-

dant Victor Plescia used his mobile telephone and pager to conduct his narcotics business and that he was involved in narcotics transactions and narcotics-related conversations and business with Nickalos Rizzato, Lee Lizzio, Kevin Geiger, Frank Bonavolante, Camillio Grossi, Anthony Grossi, Norman Demma and others as yet unknown.

This court agrees with Judge Grady that there was a sufficient showing of probable cause in the government's submissions on December 27, 1989 to support the issuance of both Title III orders.

■ Defendant Victor Plescia maintains that the Title III interceptions should be suppressed for a number of reasons relating to the executions of the Title III interceptions and the Title III orders issued. Plescia claims that the interceptions were not limited to matters material to the designated crime in that particular, private conversations between husband and wife were intercepted. However, nothing in Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq., expressly restricts interception of marital communications that otherwise comply with the statutory requirements. United States v. Malekzadeh, 855 F.2d 1492 (11th Cir.1988) cert. denied, 489 U.S. 1029, 109 S.Ct. 1163, 103 L.Ed.2d 221 (1989). Moreover, Title III "does not forbid the interception of all nonrelevant conversations." Scott v. United States, 436 U.S. 128, 140, 98 S.Ct. 1717, 1724, 56 L.Ed.2d 168 (1978). Rather, Title III requires that "[e]very [Title III] order and extension thereof ... shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter." See 18 U.S.C. 2518(5). See also Scott, 436 U.S. at 140, 98 S.Ct. at 1724. The effort of the law enforcement officers to minimize must be objectively reasonable in light of the circumstances confronting the interceptor. Id. at 136–37, 141–43, 98 S.Ct. at 1723, 1725–26.

■ Here, calls between defendant Victor Plescia and his wife and co-defendant, Dena Plescia, were intercepted. It is the government's position, as evidenced by the indictment of Dena Plescia in this case, that Dena Plescia, was involved in defendant Victor Plescia's illegal narcotics activities. Some of these intercepted conversations were related to the narcotics activities of defendants Victor and Dena Plescia and thus were clearly authorized interceptions. See Malekzadeh 855 F.2d at 1496 (approving interception of communications between husband and wife when both were part of the conspiracy). Other intercepted conversations did not involve narcotics related activities. The conversations were minimized as soon as it was determined that the conversations were not narcotics related. A few of the nonpertinent conversations between the defendant and his wife were not minimized where the conversations were about two minutes in length or less. Failure to minimize such very short conversations in a few instances is not "objectively unreasonable"—especially because the officers had reason to believe that Dena Plescia was involved in narcotics related activities with her husband and that members of the narcotics conspiracy involved often spoke in guarded and coded language. See Scott, 436 U.S. at 140, 98 S.Ct. at 1724; Malekzadeh, 855 F.2d at 1496. Interception for that length of time was necessary to determine if the calls were narcotics related. See Scott, 436 U.S. at 140, 98 S.Ct. at 1724. See also discussion, infra, pages 1075–76. The agent listening to statements must have a reasonable amount of time to determine whether they relate to the crime being investigated. "Conspiracy is a serious business, and talk about it among or by the conspirators should not be presumed to be unrelated to the accomplishment of the conspiracy's goals." United States v. Pallais, et al., 921 F.2d 684, 688 (7th Cir.1990). The court finds, therefore, that the government complied with the statute and case law in minimizing the intercepted conversations under the circumstances of this case.

■ Plescia further claims that conversations relating to crimes other than those specified in the Title III order were intercepted and the agents failed to demon-

strate or report to the issuing Judge any facts which would warrant a finding of probable cause enabling the amendment of said Court Order. Plescia appears to argue that, during the course of the Title III surveillance, the government intercepted conversations regarding illegal gambling activities and that, because the government did not amend its Title III application to include Title III interception of conversations about illegal gambling activities, none of the Title III evidence gathered (included that regarding the defendants' narcotics activities) can be used. (*See* Defendant Plescia motion and p. 10.) However, Plescia's argument lacks merit because during the course of the Title III surveillance in this case, the government intercepted many narcotics related conversation—which interception was clearly authorized by the Title III orders. The government also intercepted some conversations that may now be viewed as evidence of "gambling activity" as opposed to necessarily narcotics trafficking activity.

The court finds that the government did not violate any constitutional or statutory law in overhearing and recording these challenged conversations which may have been about gambling. The government is correct in stating that 18 U.S.C. § 2518(5) requires the government to conduct the Title III surveillance in such a way as to minimize the interception of communications not otherwise subject under the statute. The Seventh Circuit has recognized, under circumstances similar to those present here, that "[g]overnment agents ... can hardly be expected to know [which] calls are not pertinent prior to their termination"; and that "when the investigation is of a suspected large-scale conspiracy, and when the suspects speak in veiled terms, the government is justified in intercepting conversations that eventually prove to be without the scope of the Title III authorization." *United States v. Williams*, 737 F.2d 594 (7th Cir.1984) (*quoting Scott v. United States*, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978)), *cert. denied*, 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985). *See also Scott*, 436 U.S. at 140–41, 98 S.Ct. at 1724–25; *United States v. Quintana*, 508 F.2d 867 (7th Cir. 1975).

 Furthermore, the government recognizes and acknowledges that to the extent any of the Title III recordings clearly involve gambling-related as opposed to narcotics-related activities, the government would be required under 18 U.S.C. § 2517(5) to obtain authorization or approval from the court in order to introduce such intercepted gambling conversations into evidence at the upcoming trial. *See United States v. Williams*, 737 F.2d at 606. However, the court is aware that the government does not intend to introduce intercepted conversations about gambling as opposed to narcotics, into evidence at the upcoming trial which involves charges of narcotics distribution and conspiracy. Indeed, it is Plescia's counsel, and not the government, who has indicated he may seek to introduce gambling related evidence. These indications were brought to the court's attention by the filing of pretrial motions and a conference relating to an in camera submission by the prosecutors.

Defendants next claim that the Court erred in failing to order termination of Interceptions after the filing of the First Status report and erred in allowing said interceptions to continue after the filing of each successive report failed to set forth any facts regarding attainment of the desired objective. In response, the government says it filed status reports with Chief Judge Grady showing the progress made toward achievement of the authorized objective and the need for continued interception, that evidence of narcotics related activities was being gathered from the interceptions, and that continued interception was needed.

 This court has reviewed the reports submitted to Judge Grady by the government and finds that the procedure followed here complied with the law. The Eleventh Circuit has held that, even when a district court received a report of no progress, the district court is not required to terminate a surveillance, especially where the affidavit for the Title III order

sets forth a continuing criminal operation existing over a long period of time. *See United States v. Van Horn*, 789 F.2d 1492, 1498–9 (11th Cir.), *cert. denied*, 479 U.S. 854, 107 S.Ct. 190, 93 L.Ed.2d 123 (1986). In this case, obviously, there was progress as shown in the reports, and thus no need for the court to terminate the interceptions.

Defendants Dena Plescia and Anthony Grossi have filed identical motions to suppress the Title III tape recordings that were made during the first period of Title III surveillance of defendant Victor Plescia's mobile telephone. That first period of Title III surveillance was authorized by a court order entered on November 7, 1989. The surveillance began on November 7, 1989 and ended on December 7, 1989. The defendants' motions seek to suppress the Title III tape recordings made during this period on the ground that the tapes were not sealed at the time required by 18 U.S.C. § 2518(8)(a), because they were not presented to the Chief Judge for sealing until December 21, 1989.[2]

■ The court denies these motions to suppress for two reasons. First, the Constitution and Title III only permit an "aggrieved person" to suppress Title III evidence. *See* 18 U.S.C. § 2518(10); *Alderman v. United States*, 394 U.S. 165, 175 n. 9, 89 S.Ct. 961, 968 n. 9, 22 L.Ed.2d 176 (1969). This requires that defendant seeking suppression be a party to the conversation the government seeks to use at trial or that the conversation took place on his premises. *Id.* at 176–80, 89 S.Ct. at 968–70. While defendants Dena Plescia and Anthony Grossi were parties to some of the Title III interceptions they seek to suppress, they were not parties to all of them and thus each one lacks standing as to many of the recordings they now challenge. The court has generously construed the defendants' motion to allow discussion on the issues raised. Additionally, the sealing of the tapes on December 21, 1989 was in full compliance with the requirements of Section 2518(8)(a), which requires that Title III

recordings be sealed "[i]mmediately upon the expiration of the [court] order [authorizing the electronic surveillance] *or extensions thereof*" (emphasis added). In this case, an extension order was entered on December 27, 1989 authorizing Title III surveillance of the same Plescia mobile telephone for an additional thirty days ending January 26, 1990. Therefore, the recordings from the first period of Title III surveillance need not have been filed until the conclusion of the Title III surveillance authorized by the order of extension.

The defendants' motions also assert that the tapes from the first wiretap were not timely sealed in compliance with 18 U.S.C. § 2518(8)(a). However, the court does not agree: the recordings from the first wiretap were timely sealed in compliance with the requirements of § 2518(8)(a).

■ Title 18, United States Code, § 2518(8)(a) provides:

> Immediately upon the expiration of the [court] order [authorizing electronic surveillance], *or extensions thereof*, ... recordings [from the ordered surveillance] shall be made available to the judge issuing such order and sealed under his directions ...

(emphasis added). The purpose of § 2518(8)(a) is "to ensure the reliability and integrity of evidence obtained by means of electronic surveillance" by "limit[ing] the government's opportunity to alter the recordings." *United States v. Rios*, 495 U.S. 257, 110 S.Ct. 1845, 1849, 109 L.Ed.2d 224 (1990).

Cases interpreting 18 U.S.C. § 2518(8)(a) have held that when a Title III order has been extended by a subsequent extension order § 2518(8)(a) does not require that the Title III recordings made during the period of the first order be sealed immediately after the expiration of the first order but rather permits that the recordings be sealed at the termination of the extension order. *E.g., United States v. Vazquez*, 605 F.2d 1269, 1276 (2nd Cir.1979) *cert. denied*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408

---

**2.** Defendants' suppression argument applies only to the tapes from the first wiretap. The tapes from the second wiretap were sealed on

January 26, 1990—the day that wiretap ended—and defendants have not attacked the sealing of those tapes.

(1979); *United States v. Scafidi*, 564 F.2d 633, 641 (2nd Cir.1977) *cert. denied*, 436 U.S. 903, 98 S.Ct. 2231, 56 L.Ed.2d 400, 401 (1978); *United States v. Fury*, 554 F.2d 522, 533 (2nd Cir.), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977); *United States v. Gigante*, 538 F.2d 502, 507–08 (2nd Cir.1976). Where the Title III surveillance is of the same premises, involves substantially the same persons, and is part of the same investigation, a second Title III surveillance order issued after the expiration of the first order is an "extension" of the first order for purposes of 28 U.S.C. § 2518(8)(a), even if there is a gap in time between the expiration of the first order and the entry of the second. *E.g., United States v. Scafidi*, 564 F.2d at 641; *United States v. Gigante*, 538 F.2d at 507–08; In *Gigante*, the Second Circuit held, however, that where there is such a time gap between the expiration of the first order and the entry of the second, the government must satisfactorily explain the reason for that time gap in order for the second order to constitute an extension under 18 U.S.C. § 2518(8)(a) and justify the delay in sealing until after the termination of that second order. The Court stated:

> If the Government seeks an extension of the wiretap order as a ground for deferring the requirement of judicial sealing, it is incumbent upon it to do so 'immediately' or provide an explanation of its failure to do so. As contrary interpretation would fly in the face of the clear intent of § 2518(8)(a), by permitting the Government, whenever it fails to obtain immediate sealing orders, to avoid suppression by simply obtaining an extension of the initial wiretap authorization.

*Id.* at 508, n. 11.

The Second Circuit's most recent case involving the meaning of an "extension" for purposes of 18 U.S.C. § 2518(8)(a) is *United States v. Rios*, 875 F.2d 17 (2nd Cir.1989), *rev'd on other grounds*, 495 U.S. 257, 110 S.Ct. 1845, 109 L.Ed.2d 224 (1990). In *Rios*, the Second Circuit again indicated—in keeping with its prior precedent—that where a subsequent Title III order involved the same premises, same telephone, same crimes and substantially the same persons it would be considered an extension of an earlier order even though there was a gap in time between the termination of the earlier order and the entry of the subsequent order as long as the government satisfactorily explains the time gap. *Rios*, 875 F.2d at 21–23.

The court here finds that Judge Grady's December 27, 1989 order was an extension of the electronic surveillance he ordered on November 7, 1989, and thus that the recordings made during the surveillance conducted between November 7 and December 7, 1989 did not have to be presented for sealing until January 26, 2990, the date the December 27, 1989 surveillance order expired. Clearly, the November 7, 1989 and the December 27, 1989 orders involved the same telephone, the same persons, the same crimes, and the same investigation. Also, the twenty day gap between the expiration of the November 7, 1989 order on December 7, 1989 and the entry of the December 27, 1989 order is satisfactorily explained by the fact that the twenty days were needed to prepare the new application and affidavit and to obtain approval from the United States Attorney in Chicago and the authorities at the Department of Justice in Washington, D.C. which had to review the entirely new application and affidavit. Case law supports the government's position that the December 27, 1989 order was an extension of the November 7, 1989 order, and that all the Title III recordings obtained pursuant to these orders need not have been presented for sealing until January 26, 1990 when the December 27, 1989 order terminated. The government did seal the recording from the first Title III surveillance timely when it sealed them on December 21, 1989.

Defendants further argue that under the Supreme Court's recent decision in *United States v. Rios*, 495 U.S. 257, 110 S.Ct. 1845, 109 L.Ed.2d 224 (1990), the tapes from the first wiretap must be suppressed if the tapes were not timely sealed. However, even if the tapes in this case were not timely sealed in compliance with 18 U.S.C. § 2518(8)(a), the tapes should not be suppressed because the government has a sat-

isfactory explanation for the delay in sealing. In *Rios*, the Supreme Court stated that, absent such a "satisfactory explanation," the tapes must be suppressed pursuant to the provision of 8 U.S.C. § 2518(8)(a), which states that "the presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be prerequisite for the use or disclosure of the contents of any wire, oral, or electronic communication or evidence derived therefrom ..." The Supreme Court rejected the Government's argument that requirement of a § 2518(8)(a) satisfactory explanation applied only when the tapes were never sealed and not when the sealing of the tapes was untimely. In this respect, the Supreme Court's April 30, 1990 decision in *Rios*—which was issued several months after the *Plescia* Title III was completed—overruled prior well-established Seventh Circuit law, which held that untimely sealed Title III tapes need not be suppressed in the absence of a satisfactory explanation for the delay in sealing as long as the government proved the authenticity and integrity of the tapes. *See United States v. Angelini*, 565 F.2d 469, 471–73 (7th Cir.1977); *United States v. Lawson*, 545 F.2d 557, 564 (7th Cir.1975).

The government explanation deemed "satisfactory" by the *Rios* Court was that the government attorney supervising the wiretaps had believed that he was required to have tapes sealed at the expiration of a surveillance order only if a meaningful hiatus in the investigation as a whole intervened between the expiration of one order and entry of the next. Absent such a hiatus, the subsequent order was an "extension" of the first and extended the time for sealing. The Supreme Court, after reviewing Second Circuit precedent prior to *Rios*, held that whether or not this view of the law had been correct, it has been "objectively reasonable at the time" and hence constituted good cause for the long delays in sealing. *Id.* 110 S.Ct. at 1850–51.

■ The court finds that, even if the sealing on December 21, 1989 was untimely under § 2518(8)(a), the government has a "satisfactory explanation" for the brief two week delay in sealing, and thus under established Supreme Court precedent suppression of the tapes is not authorized. The government's "explanation" follows:

> On November 7, 1989, Chief Judge John F. Grady entered an order authorizing Title III surveillance for thirty days of the mobile telephone assigned number 312/618–4233, a telephone used by defendant Victor Plescia, and is hereinafter referred to as the "Plescia mobile telephone." The surveillance authorized by that order began on November 7, 1989 and ended on December 7, 1989. During the last couple of days of that electronic surveillance, Assistant United States Attorneys Alexander Vesselinovitch and Helene Greenwald, who were in charge of the investigation, decided to apply for an extension of the Title III surveillance order so that the Plescia mobile telephone could be monitored for an additional thirty day period. Such an application required the drafting of a new affidavit based on information gathered during the initial Title III surveillance in order to establish probable cause for the extension. Additionally, standard Department of Justice ("DOJ") and United States Attorney's Office requirements mandated that before an application for extension could be submitted to the court, the application for extension and the new affidavit had to be submitted for approval to the United States Attorney and supervisory authorities in this district as well as to the supervisory authorities in DOJ in Washington, D.C. The Assistant United States Attorneys initially anticipated that the whole process of drafting the new application and affidavit and obtaining approval would take about one week. In the "Government's Third Report to the Court," filed on December 7, 1989 at the conclusion of the first period of Title III surveillance, the Government notified the Chief Judge of its intention to seek an order of extension of the Title III surveillance of the Plescia mobile telephone:

> > It is the Government's intention to submit an application requesting that this Court enter an order extending the

authorization to conduct the wire and electronic interception for an additional thirty days. Currently, the United States Attorney's Office for the Northern District of Illinois is preparing the necessary papers to request approval from the Department of Justice in Washington, D.C., to apply for an extension. Such approval is expected to be received in about one week. At that time, an application for further monitoring will be submitted.

The government's explanation continues:

Title 18, United States Code, Section 2518(8)(a) provides that "[i]mmediately upon the expiration of the [court] order [authorizing electronic surveillance], *or extensions thereof,* ... [the] recordings [from the surveillance] shall be made available to the judge issuing such order and sealed under his directions ..." (emphasis added). At the time of the Title III surveillance in this case, the Government reasonably believed that: (1) the second order that it planned to seek for a second period of Title III surveillance of the Plescia mobile telephone would be an "extension" of the first Title III order for purposes of section 2518(8)(a); and (ii) that the Title III recordings from the first surveillance period would not have to be sealed until the expiration of the second period of surveillance conducted pursuant to the extension order. The government believed the second order would be an "extension" of the first even though there would be a time gap between the end of the first surveillance period and the entry of the subsequent Title III order as long as the time gap was a reasonable period of time necessary for the drafting of and obtaining the approval for the new Title III application and affidavit. A new affidavit had to be created from the information gathered during the first wiretap. Approximately 400 conversations were intercepted and recorded during the first wiretap. Additionally, during the first wiretap law enforcement officers had conducted extensive physical/visual surveillance of subjects of the wiretap. This surveillance produced additional evidence regarding the defendants' drug activities. While these taped conversations and reports of visual surveillance had been reviewed during the course of the wiretap and relevant ones were reported to the Chief Judge in the required ten day reports, the preparation of the new application and affidavit required additional review of the tapes and reports to ensure that the affidavit and application were as complete as possible. The new affidavit comprised over twenty pages and contained new information substantially different from that in the first affidavit.

The government's explanation concludes:

On December 21, 1989, DOJ authorities had not yet completed their review of the new application and affidavit. Because the Assistant United States Attorneys on the case did not know how much longer it would be before the extension papers would be approved for court submission and because they wanted to ensure full compliance with the sealing requirements of Section 2518(8)(a), the Assistant United States Attorneys—in an abundance of caution—had the recordings from the first surveillance sealed on December 21, 1989. About one week later—on December 26, 1989—DOJ approval of the application for extension was received and the application for an extension order and the new affidavit in support of the extension were submitted on December 27, 1989 to Chief Judge Grady, who that same day entered an order of extension authorizing the electronic surveillance of the same Plescia mobile telephone for an additional thirty days. Surveillance pursuant to this order of extension began on December 27, 1989 and terminated on January 26, 1990. Because the government did not plan to seek any further orders of extension, the Title III recordings made during the period authorized by the extension order were presented to and sealed by Chief Judge Grady on January 26, 1990, the same day the interception terminated.

This court finds, as did Judge Grady, that the government's explanation is satisfactory.

It was objectively reasonable in November and December of 1989, for the Assistant United States attorneys to believe—given the *Rios* decision and other decisions cited above and by the Supreme Court in *Rios*—that the second Title III order on the Plescia mobile telephone that they sought to obtain would be an extension of the prior order that expired on December 7, 1989, and that the tapes made during the period authorized by the first order did not have to be sealed until immediately after the second order expired.

The court finds further that the good faith of the Assistant United States Attorneys' belief that they would be able to seal all the tapes at the end of the extension, and the lack of any other motive on their part for delay, is amply shown by their other actions before Judge Grady. The Assistants reasonably believed that a second Title III order for the Plescia mobile telephone would be an extension of the first even though there would be a time gap between the termination of the first order and the entry of the second as long as the time gap was a period of time reasonably necessary to obtain a new order. The Assistants notified Chief Judge Grady at the conclusion of their first wiretap of their intention to work expeditiously on drafting and obtaining approval of an application and affidavit for an extension order and to seek such an extension order shortly. The Assistants then worked expeditiously on drafting and obtaining approval of the necessary paperwork. Once it became apparent on December 21, 1989 that it would take more than two weeks to draft the new affidavit and obtain office and Department of Justice approval, the Assistants sought—out of an abundance of caution—to have the tapes obtained under the first order sealed that very day. They did this even though they reasonably believed that further delay caused by necessary work on an approval of the request for the second order would not destroy the character of the second order as an "extension."

In short, they did this to ensure compliance with the sealing requirement of 18 U.S.C. 2518(8)(a).

■ On review of the record, the court also finds, finally, even apart from the Assistant United States Attorney's justifiable belief that sealing would not have been required by § 2518(8)(a) until the second order expired, and even apart from their prompt action to have the tapes sealed as soon as it appeared there would be more than a two week delay before the second order could be obtained, the government has a reasonable explanation that excuses the delay of only 14 days in sealing the tapes (compared to the 82 and 118 days delays held excused in *Rios*). In *Rios*, the government's affidavit in support of a subsequent Title III order "did not differ significantly from the earlier ones" and indeed "was textually similar and in fact shorter." 875 F.2d at 23. Here in contrast, during the period of time between the expiration of the first order and sealing the *Plescia* tapes, the government's attorneys made significant changes in the prior affidavit, based on the time-consuming review of material obtained pursuant to the first order, and then had to await office and Department of Justice approval of the entirely new affidavit. [The defendants do not claim that anything unlawful or prejudicial to them occurred during the 14 day period.] The sequence of events in this case is amply explained by the government's belief it would obtain an extension, and by the amount of work involved in getting a new order.

Accordingly, the motion of defendants to suppress the Title III court-authorized electronic surveillance is denied.

IT IS SO ORDERED.