**Michael SCOTT, Plaintiff,**

v.

**Police Officer Marco GLUMAC, Defendant.**

**No. 91 C 6258.**

United States District Court, N.D. Illinois, E.D.

May 19, 1992.

Stacey Lynnette Beckman, Kenneth N. Flaxman, Kenneth N. Flaxman, P.C., Chicago, Ill., for plaintiff.

Richard T. Ryan, Mark F. Smolens, Richard L. Jones, Flynn, Murphy, Ryan & Seyring, Chicago, Ill., for defendant.

## ORDER

NORGLE, District Judge.

Before the court is Officer Marco Glumac's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). The court grants the motion for reasons stated below.

## FACTS

The facts are undisputed. Officer Glumac and his partner are Calumet City, Illinois, police officers. They were told shortly before October 4, 1989, by the Chicago Police Department that there was a judicially issued "no bond" arrest warrant for Michael Scott ("Scott") based on a prior felony charge for possession of a controlled substance. On October 4, the officers saw Scott exit from his 1982 Cadillac El Dorado and walk directly into his residence at 493 East End Avenue in Calumet City. The officers called for additional police support.

After the back-up arrived, the officers approached the car and arrested the individual sitting in the passenger seat. Three officers then approached the building, knocked on the front door, and asked for Mr. Michael Scott. Someone inside said he would be right out. After repeatedly knocking for several minutes and no appearance at the door by anyone, the officers broke down the door.[1] They found Scott in an upstairs hallway, dressed exactly as he was when they saw him enter the building, and arrested him based on the outstanding felony warrant.

Scott was searched incident to his arrest. He had in his possession one large plastic bag containing numerous small green plastic zip-lock bags, one small green plastic zip-lock bag that contained one tenth of a gram of a white powdery substance (later determined to be cocaine), and $541 of U.S. currency.

Officer Glumac searched the El Dorado and ordered it towed, both without a warrant. The car was legally parked and presented no apparent danger to the officers or the public. When asked at his deposition why the vehicle was towed, Officer Glumac responded that he seized it because Scott was under arrest and also based on the Illinois forfeiture statute (Ill. Rev.Stat. ch. 38, ¶ 36–1 (1991)) ("the forfeiture act").[2]

---

1. Scott's memorandum in opposition to summary judgment states that about twenty minutes past from the time Scott alighted from his vehicle until he was arrested.

2. The full colloquy between Officer Glumac and Scott's counsel on the subject is as follows:

Q: And why did you call for a tow truck?
A: Because the gentleman was under arrest.
Q: Was there any other reason why you called for a tow truck?
A: No.
Q: Was the car legally parked at the place where it was when Mr. Scott got out of it?
A: Yes.

Q: Well, was the car in danger to anyone when it was parked outside of Mr. Scott's apartment?
A: No.
Q: Is there any other reason why you called for it to be towed other than placing Mr. Scott under arrest?
A: Based on the Illinois forfeiture statute, that was the reason why I had the car towed....
Q: What do you mean by based on the forfeiture statute?
A: Well, that he was in possession of narcotics and a large amount of United States currency, and based on those facts and the fact that he got out of his car and went into his

Scott filed this civil suit, against Officer Glumac individually under 42 U.S.C. § 1983, alleging that he was wrongfully deprived of his vehicle in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States. Officer Glumac's motion for summary judgment asserts that the seizure of the vehicle was lawful and he is therefore qualifiedly immune from the allegations in the complaint.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *Capital Options Invs., Inc. v. Goldberg Bros. Commodities, Inc.*, 958 F.2d 186, 188 (7th Cir.1992). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Because no material fact is disputed by either party, this matter is ripe for summary determination.

■■ Officer Glumac claims his seizure of the car was proper pursuant to the forfeiture act. Paragraph 36–1 of that act provides that a vehicle may be seized if it is used with the knowledge and consent of the owner in committing or attempting to commit a violation of the Illinois Controlled Substances Act. The officers must, however, have probable cause to believe that the vehicle was used in violation of the Controlled Substances Act before the car is properly subject to seizure. *United States v. Pace*, 898 F.2d 1218, 1241 (7th Cir.1990), *cert. denied,* — U.S. —, 110 S.Ct. 3286, 111 L.Ed.2d 795 (1990), *and cert. denied,* — U.S. —, 111 S.Ct. 210, 112

L.Ed.2d 170 (1990). If there is probable cause to support this belief, there is no need for the officers to obtain a warrant to seize the vehicle. *Id.* at 1241–43 (analyzing validity of warrantless seizure based on Illinois and federal seizure acts). Accordingly, the issue here is whether Officer Glumac had probable cause to believe that Scott was using his car in the commission of or attempted commission of a violation of the Illinois Controlled Substances Act.

■ A probable cause determination is based on the totality of circumstances known to the officers at the time. *United States v. Lamon*, 930 F.2d 1183, 1187–88 (7th Cir.1991) (review of probable cause determination in search warrant context). In the instant circumstances then, there was a fair probability that the automobile was used in the pursuit of criminality prohibited by relevant laws. *See United States v. McGuire*, 957 F.2d 310, 314 (7th Cir.1992) (warrantless search of bag held in car); *cf. United States v. Plescia*, 773 F.Supp. 1068, 1074 (N.D.Ill.1991) (probable cause standard for issuance of search warrant).

Here, Officer Glumac and his partner watched a man known to them to be Scott exit from a motor vehicle and go straight into an apartment building. A person waited in Scott's car—ostensibly for Scott's return. Shortly thereafter, Scott was arrested with cocaine, plastic bags often associated with drug trafficking, and a wad of cash. This information adequately supported Officer Glumac's conclusion that there was probable cause to believe the car was being used in violation of paragraph 36–1.

But Officer Glumac had more information at hand which supported his conclusion that there was probable cause to seize the vehicle. Officer Glumac knew of an outstanding "no bonds" warrant on Scott for a drug-related felony. The officer consequently knew that Scott had once before

---

residence. Based on that, that's why I towed the car.
Q: Well, so are you telling us that you believed that at the time you had the car towed, that you believed Mr. Scott had somehow

used this car to assist him in narcotics, violation of narcotics laws.
A: Yes.
Dep. of Officer Glumac at 10–11.

been arrested and charged with a drug related-offense, eluded police while he was out on bond, and that a judge had decided that there was sufficient evidence of probable cause of violation of that bond on the drug charge to issue a warrant for Scott's arrest. Without more, the fact that a "no bonds" warrant had been issued in a drug case would not be enough to support a probable cause determination sufficient to seize the vehicle under the forfeiture act. However, this information bolstered Officer Glumac's legitimate belief that Scott might be engaged in criminality prohibited by the Illinois Controlled Substances Act and that the car was being used to facilitate those activities. Given the entirety of facts known to Officer Glumac at the time, he reasonably determined that probable cause existed to seize Scott's car.

Scott makes much of Officer Glumac's statement that the car was impounded because he arrested Scott. If Officer Glumac had said nothing more, further analysis would be necessary to determine if the seizure was proper. *See* Ralph Ruebner, *Illinois Criminal Procedure*, ch. 1, *Arrests, Search, and Seizures* (1987) (describing exceptions to warrant requirement for detention of vehicle). However, Officer Glumac stated immediately thereafter that he seized the vehicle pursuant to the forfeiture act. And, as the foregoing analysis describes, that seizure was appropriately based on probable cause. The fact that the officer gave one potentially incorrect answer does not invalidate the alternatively appropriate basis.

Scott makes two other protests to a finding of probable cause. First, he complains that the car was seized even though there was no contraband found in the car when Officer Glumac searched it. The Act, however, nowhere says that if the officer searches the car and finds nothing, he may not still seize the vehicle. The litmus test is whether there was probable cause to

believe the vehicle was being used to violate Illinois's Controlled Substance Act by the person using the car. *Pace*, 898 F.2d at 1241. The fact that the car contains no contraband is irrelevant. If the officer has probable cause to believe the vehicle was used in the commission, or attempted commission, of a violation of the Controlled Substances Act, the vehicle may be seized.

*People ex rel. Mihm v. Miller*, 89 Ill. App.3d 148, 44 Ill.Dec. 470, 411 N.E.2d 592 (3d Dist.1980) is instructive on this point. Charles Miller was pulled over for rolling through a stop sign. After seeing what he believed to be marijuana on the dash, one of the officers asked Miller to exit the car. When Miller stepped out, he dropped a small plastic envelope containing .08 grams of cocaine. At a forfeiture proceeding for Miller's car, the trial court dismissed the complaint stating that the presence of the drugs on defendant while in the car "was merely coincidental in time and place" and thus not used in the commission of a prohibited act. *Id.* at 149, 44 Ill.Dec. at 471, 411 N.E.2d at 593.

The Illinois Appellate Court for the Third District reversed that holding. "While there may be some question as to whether an automobile facilitates the actual possession of a very small amount of a controlled substance which is carried on the person of the driver, to the extent the automobile adds a dimension of privacy, however, it does facilitate the possession." *Id.* at 150, 44 Ill.Dec. at 471, 411 N.E.2d at 593.

Here, the inference from the facts known to Officer Glumac at the time was that Scott had the drugs on his person when he exited his car or was at least using it as a means of facilitating a drug transaction. Whether or not the drugs ever were physically placed in the body of the car is an extraneous detail. The shroud of privacy the vehicle provided is sufficient to subject it to forfeiture.[3]

---

**3.** The close proximity in time between which Scott was seen exiting his car and his arrest supports the conclusion that the car transported Scott and the drugs. However, the forfeiture act does not require that the drugs be transported in the vehicle to allow it to be subject to seizure. The vehicle need merely be *used* in the commission of, or attempted commission of, a prohibited crime. Ill.Rev.Stat. ch. 38, ¶ 36–1 (1991) (emphasis added). Serving as a cloak of secrecy is not the only manner in which the car might be "used" in a drug transaction. Multiple

Second, Scott notes that Officer Glumac supposedly admitted that he had no reason to believe the car carried contraband. Scott's interpolation of selectively redacted statements of Officer Glumac does not accurately reflect the entirety of the record, especially the other statements made by the officer at his deposition.

■ Officer Glumac acted with probable cause in seizing Scott's vehicle under the Ill.Rev.Stat. ch. 38, ¶ 36–1. Scott's last hope is to pierce Officer Glumac's qualified immunity shield. He may breach that armor only by showing that a reasonable officer would have known that seizing the automobile under paragraph 36–1 was unlawful. *Juriss v. McGowan*, 957 F.2d 345, 350 (7th Cir.1992). Officer Glumac acted as a reasonable officer based on the facts then and there before him. *See McGee v. Bauer*, 956 F.2d 730, 735 (7th Cir.1992) (review of qualified immunity is based on particularized facts of each case). Accordingly, he is entitled to qualified immunity for his actions.

## CONCLUSION

Officer Glumac's motion for summary judgment is granted.

IT IS SO ORDERED.

vehicles might be forfeited as a result of one transaction without any of them concealing the drugs. For example, if one car is driven to a drug transaction scene carrying the seller, another carries the buyer, and a third carries persons conducting surveillance, all three cars are being "used" within the meaning of the forfeiture act even though the drugs are located inside the meeting place of buyer and seller. The "use" is no less because the car did not physically conceal the drugs. If the officer has probable cause to believe the vehicles were being used for the commission or attempted commission of a crime prohibited by the forfeiture act, he or she may seize the vehicles. *See generally, United States v. Hammond*, 826 F.2d 577 (7th Cir.1987) (facts drawn from this case).