**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Joseph Henry KOTVAS, Jr.; Cullen H. Williams, a/k/a, Buster Williams, Claude Tanner, Defendants–Appellants.**

No. 86–3672.

United States Court of Appeals, Eleventh Circuit.

Sept. 12, 1991.

Arthur Addess, Kenwood, Cal., Tampa, Fla., for Kotvas.

Joseph Beeler, Miami, Fla., for Tanner.

Neil H. Jaffee, Washington, D.C., for Williams.

Joseph D. Magri, Omer Poirier, Karla R. Spaulding, Asst. U.S. Attys., Tampa, Fla., for U.S.

Before FAY and DUBINA, Circuit Judges, and ESCHBACH *, Senior Circuit Judge.

DUBINA, Circuit Judge:

Appellants Claude Tanner, Cullen H. Williams, and Joseph Kotvas appeal their convictions for various violations of the federal statutes relating to the bribery of public officials. The appellants raise thirteen issues on appeal: (1) whether the RICO offense instruction given by the district court adequately advised the jury as to the elements of the offense; (2) whether the evidence against appellant Williams was sufficient; (3) whether violations of the Florida Unauthorized Compensation Statute are appropriate predicate acts under RICO; (4) whether the district court erred in rejecting appellant Tanner's proposed statute of limitations jury instruction; (5) whether the mail fraud charges premised upon the deprivation of the citizenry's intangible right to good government are valid; (6) whether the district court erred in denying a defense motion for change of venue based upon pretrial publicity; (7) whether the district court erred in

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

refusing to grant the extraordinary remedy of an in-camera review of government files to search for the suppression of exculpatory evidence; (8) whether the district court erred in refusing to allow defense counsel to conduct post-verdict jury interviews; (9) whether the district court erred in admitting evidence of prior consistent statements of the chief government witness through another witness; (10) whether the jury was coerced by the district court's handling of the jury or the district court's giving of a modified *Allen* charge; (11) whether the district court properly admitted tape-recorded conversations into evidence; (12) whether the district court erred in refusing to give a proposed defense jury instruction concerning an element for conviction of extortion by unlawfully obtaining property under color of official right under the Hobbs Act; and (13) whether a defendant may be prosecuted for RICO violations even if one of the predicate acts was previously the subject of a Hobbs Act prosecution. After reviewing the record, we find no merit to any of the appellants' arguments concerning issues two, four, six, seven, eight, nine, ten, eleven, twelve, and thirteen and affirm the appellants' convictions as to those issues without opinion. However, we feel compelled to address the issues concerning the RICO offense instruction, the Florida Unauthorized Compensation statute, and the mail fraud counts. For the reasons which follow, we affirm the appellants' convictions on all counts except the mail fraud counts.

## I. BACKGROUND

Appellants were members of the Hillsborough County Commission in Tampa, Florida. The Board of County Commissioners ("BOCC") is the chief legislative and policy-making body for Hillsborough County, Florida. The BOCC serves as the final authority on zoning matters in the county and makes the final decision on rate increase requests and franchise agreements for certain waste disposal companies and for major county projects. As early as 1982, the Federal Bureau of Investigation ("FBI") learned from a former county commissioner that some of the BOCC commissioners had attempted to extort money with respect to pending rezoning petitions. The FBI then began an extensive investigation into the inner workings of the BOCC.

After a three year investigation conducted by the FBI, a grand jury in the Middle District of Florida indicted Claude Tanner, Cullen H. Williams, Joseph Kotvas, and twenty-seven other defendants for conspiracy to conduct and participate in the affairs of the BOCC through a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d). The indictment also charged several defendants with the substantive offense of conducting and participating in the conduct of the affairs of the BOCC through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

At trial, the government called 102 witnesses and introduced over 1,300 exhibits. Two former county commissioners testified as to their own involvement in bribes affecting the operation of the BOCC. The defense was allowed to cross-examine the government's chief witness for fourteen days. After a six-month trial, the jury returned guilty verdicts on various counts listed in the indictment against the appellants and acquitted thirteen of their co-defendants of all counts.

## II. DISCUSSION

### A. *RICO offense instruction*

The substantive elements of a violation of 18 U.S.C. § 1962(c) are as follows: "(1) the existence of an enterprise; (2) that the enterprise affected interstate commerce; (3) that the defendant was employed by or associated with the enterprise; (4) that he participated, either directly or indirectly, in the conduct of the affairs of the enterprise; and (5) that he participated through a pattern of racketeering activity, i.e., through the commission of at least two racketeering acts." *United States v. Kopituk*, 690 F.2d 1289, 1323 (11th Cir.1982), *cert. denied*, 461 U.S. 928, 103 S.Ct. 2089, 77 L.Ed.2d 300 (1983). The question of whether the trial court instructed the jury as to all of the

elements of the offense is an issue of law over which this court has plenary power of review. *United States v. Malekzadeh*, 855 F.2d 1492, 1496 (11th Cir.1988), *cert. denied*, 489 U.S. 1029, 109 S.Ct. 1163, 103 L.Ed.2d 221 (1989). "The trial court has broad discretion in formulating a jury charge, 'so long as the charge accurately reflects the law and the facts.'" *United States v. Padilla–Martinez*, 762 F.2d 942, 952 (11th Cir.), *cert. denied*, 474 U.S. 952, 106 S.Ct. 320, 88 L.Ed.2d 302 (1985) (quoting *United States v. Borders*, 693 F.2d 1318, 1328–29 (11th Cir.1982), *cert. denied*, 461 U.S. 905, 103 S.Ct. 1875, 76 L.Ed.2d 807 (1983) (citations omitted)). The specific formulation of the charge and the refusal to give a requested defense instruction are both subject to review under an abuse of discretion standard. *Padilla–Martinez*, at 952.

Appellants Williams and Tanner contend that the district court's instruction to the jury was not sufficient regarding all the substantive elements of the offense under 18 U.S.C. § 1962(c). The appellants claim the district court committed reversible error by not providing to the jury the defense's requested instruction regarding a continuity element to racketeering activity. "The refusal to give a requested instruction warrants reversal only if (1) the [requested] instruction was substantially correct, (2) the requested instruction is not addressed in the charge actually given, and (3) the failure to give the requested instruction seriously impaired the defendant's ability to present an effective defense." *United States v. Fajardo*, 787 F.2d 1523, 1527 (11th Cir.1986) (quoting *United States v. Lopez*, 758 F.2d 1517, 1521 (11th Cir.1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 789, 88 L.Ed.2d 767 (1986)). We are persuaded that the proposed instruction did not meet any of these requirements for reversal, and as such, the district court's refusal to give the proposed instruction was not an abuse of its discretion.

█ The proposed instruction stated: "In addition, the defendant's acts of racketeering activity must be continuing, and more than sporadic, a pattern which in-

cludes different criminal episodes or transactions somewhat separated in time." R9–1266. This proposed instruction is not substantially correct according to the Supreme Court's decision in *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). According to the Supreme Court, "[c]ontinuity is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241, 109 S.Ct. at 2901. The proposed instruction ignored the open-ended concept and would have incorrectly advised the jury that it had to find a closed period of repeated conduct in order to find a RICO violation.

█ Second, the charge given by the district court concerning the RICO offense was substantially correct because it instructed the jury on the element of continuity, which is required by the Supreme Court in *H.J., Inc.*, 492 U.S. at 241–250, 109 S.Ct. at 2901–06. The instructions given to the jury were standard Eleventh Circuit pattern jury instructions. With respect to the pattern element of an 18 U.S.C. § 1962(c) violation, the district court instructed the jury as follows: "Third, that the two predicate offenses allegedly committed by the Defendant were connected with each other by some common scheme, plan or motive so as to be a pattern of criminal activity and not merely a series of separate isolated or disconnected acts." R187–175. This instruction comports with the language of the Supreme Court in *H.J., Inc.*, and thus, sufficiently addresses the element of continuity.

The Court in *H.J., Inc.* emphasized that it is the factor of continuity plus relationship that combines to produce a pattern. *Id.* at 239, 109 S.Ct. at 2900. The term "pattern" itself requires the showing of a relationship between the predicate acts and of the threat of continuing activity. *Id.* (citations omitted). "In normal usage, the word 'pattern' here would be taken to require more than just a multiplicity of racketeering predicates." *Id.* at 238, 109 S.Ct. at 2900. In the present case, the district court in-

structed the jury that continuity was required by stating that there must be a pattern of criminal activity and not just a series of separate isolated or disconnected acts. The appellants' proposed instruction did not contain any greater elaboration on the continuity requirement than the instruction given by the district court. Thus, the jury instruction, as given, was sufficient to advise the jury on the element of continuity.

Third, the jury instruction given by the district court did not prejudice the appellants in any way. The RICO violation charged in the indictment was the attempt to participate in the affairs of the BOCC through a pattern of bribery aimed at affecting the BOCC's decisions. The activities of the BOCC were necessarily continuous. By its very nature, the conduct which forms the basis of the RICO charge carries the threat of continuing activity. The jury was instructed that it must find beyond a reasonable doubt that the predicate offenses committed by the appellants were connected with each other by some common scheme, plan or motive so as to be a pattern of criminal activity and not merely a series of separate or isolated or disconnected acts. R189–175. The instruction did not prejudice the appellants by impairing their ability to present an effective defense. In summary, we find that the instruction given by the district court was not constitutionally infirm and that the district court did not err in its refusal to give the proposed defense jury instruction.

B. *Florida Unauthorized Compensation Statute*

■ Appellants Williams and Tanner argue that violations of the Florida Unauthorized Compensation Statute, Fla.Stat. § 838.016 (1979), are not predicate acts under the RICO definition of acts involving bribery. Appellants contend that this statute does not include a requirement of corrupt intent or "quid pro quo" and thus does not fall within RICO's definition of bribery. This issue involves a question of law over which this court has plenary power of review. *See United States v. Malekzadeh,* 855 F.2d at 1496.

RICO's definition of racketeering activity includes "any act or threat involving ... bribery ... which is chargeable under state law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A). Appellants contend that Congress intended to incorporate the common law definition of bribery, which includes a corrupt intent or "quid pro quo" requirement, into the definition of racketeering activity. Thus, appellants argue that the Florida statute titled "Bribery," Fla.Stat. § 838.015, is the appropriate statute for the basis of a predicate act under RICO.

An argument similar to the appellants' was rejected by the Seventh Circuit in *United States v. Garner,* 837 F.2d 1404 (7th Cir.1987), *cert. denied,* 486 U.S. 1035, 108 S.Ct. 2022, 100 L.Ed.2d 608 (1988). In *Garner,* the appellants had filed a motion to strike any references in the indictment to the Illinois Official Misconduct Statute, Ill.Rev.Stat. Chapter 38, paragraph 33–3(d), which proscribed "the unlawful acceptance of a payment knowing that it was given to reward past or future favors." *Id.* at 1417. The appellants in *Garner* argued that violations of the Illinois Official Misconduct Statute could not constitute predicate acts under RICO because that statute "had no requirement of a corrupt intent or quid pro quo." *Id.* at 1417–18. The *Garner* court rejected that argument by stating that "[t]he labels placed on a state statute do not determine whether that statute proscribes bribery for purposes of the RICO statute." *Id.* at 1418. "Congress intended for 'bribery' to be defined generically when it included bribery as a predicate act." *Id.* The court found that the Illinois Official Misconduct Statute did proscribe bribery in the generic sense and, accordingly, the use of the Illinois Official Misconduct Statute as the basis for a predicate act was correct. *Id.*

The RICO statute also defines "racketeering activity" as "any act which is indictable under ... [T]itle 18, United States Code: Section 201 (relating to bribery) ..." 18 U.S.C. § 1961(1)(B). Section 201(c)(1)(B) of Title 18 makes it a felony for a public official to unlawfully "receive ... anything

of value personally for or because of any official act performed or to be performed by such official...." "Thus, the receipt of an illegal gratuity by a federal public official constitutes a RICO predicate act." *Garner*, at 1418. "We see no reason why Congress would have defined bribery more broadly for federal officials than for state officials, particularly when it is remembered that Congress intended for RICO to 'be liberally construed to effectuate its remedial purpose.'" *Id.* (quoting Pub.L. 91–452, Title IX, Section 904(a), 84 Stat. 941 (1970)).

Congress intended for RICO to be read broadly. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). Appellants' position would narrow the definition of predicate acts under RICO and frustrate the intent of Congress. We agree with the Seventh Circuit's decision in *Garner* that the state statute addressing unauthorized compensation is a proper basis for a predicate act under RICO. The receipt of an unauthorized compensation in exchange for favorable action by a person in a position of public service constitutes an act involving bribery. The Florida Unauthorized Compensation Statute comports with the definition of racketeering activity as defined in RICO. Accordingly, the district court did not err in allowing this statute to form the basis for a predicate act.

### C. *Mail Fraud*

■ Appellants Williams and Kotvas each request that their convictions for mail fraud be reversed on the basis of this court's decision in *United States v. Italiano*, 837 F.2d 1480 (11th Cir.1988). In *Italiano*, this court reversed the mail fraud conviction of a codefendant of Kotvas and Williams who was charged in the same indictment but whose case was severed prior to trial and who was tried separately. The court's decision in *Italiano* was based upon the Supreme Court's holding in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987) that the mail fraud statute was not intended to reach schemes to defraud the citizenry of their intangible right to good government.

Since the count on which Mr. Italiano was convicted is virtually identical to the mail fraud counts on which appellants were convicted, this court's decision in *Italiano* that the mail fraud charge was fatally flawed because it failed to allege that either the county or state was deprived of property or money by the alleged scheme is binding.

### III. CONCLUSION

Consistent with the Supreme Court's decision in *McNally*, and this court's decision in *Italiano*, we must vacate the mail fraud convictions of appellants Williams and Kotvas. In all other respects, we affirm the appellants' judgments of conviction.

AFFIRMED in part, VACATED in part, and REMANDED for resentencing.