**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Drayton CURRY, a/k/a Mr. C.,**
**Defendant–Appellant.**

No. 92–5162.

United States Court of Appeals,
Fourth Circuit.

Argued March 5, 1993.

Decided May 7, 1993.

Sean Joseph Coleman, Fairfax, VA, argued, for defendant-appellant.

Peter Rolf Maier, Sp. Asst. U.S. Atty., Alexandria, VA, argued (Richard Cullen, U.S. Atty., on brief), for plaintiff-appellee.

Before WILLIAMS, Circuit Judge, SPROUSE, Senior Circuit Judge, and HOWARD, United States District Judge for the Eastern District of North Carolina, sitting by designation.

### OPINION

WILLIAMS, Circuit Judge:

Drayton Curry was arrested on June 14, 1991, as he was leaving a hotel room with a suitcase of heroin. Curry had met with Bernadette Scott and Arthur Watson in the hotel room to discuss a drug transaction. This meeting was video and audio taped by the Drug Enforcement Agency (DEA).

A jury convicted Curry of conspiracy to possess with intent to distribute more than one kilogram of heroin and five or more kilograms of cocaine, and possession with intent to distribute one kilogram or more of heroin. 21 U.S.C. §§ 841(a)(1), 846 (1988). The jury also ordered forfeiture of Curry's interest in his residence and his Mercedes–Benz automobile. On January 17, 1992, the district court sentenced Curry to life in prison.

On appeal, Curry challenges: (1) the denial of his request to review the master jury list prior to trial; (2) the refusal to strike the testimony of a government witness who invoked the Fifth Amendment on cross-examination; and (3) the denial of his motion for a mistrial based on the government's improper bolstering and vouching for the credibility of government witnesses.[1] We will address each of these issues seriatim.

### I.

■ Prior to trial, Curry moved for disclosure of grand jury matters, including the master list of jurors from which the grand jury indicting him was selected. Curry asserted that under 28 U.S.C. § 1867 (1988) and *Test v. United States*, 420 U.S. 28, 30, 95 S.Ct. 749, 750, 42 L.Ed.2d 786 (1975), he had an *unqualified* right to inspect the jury list in order to determine if there was a factual basis for a motion challenging the jury selection procedures. Curry contends that the district court's denial of his request was error. We agree.

In *Test*, the Supreme Court held that § 1867(f)

> makes clear that a litigant has essentially an *unqualified* right to inspect jury lists. It grants access in order to aid parties in the "preparation" of motions challenging jury-selection procedures. Indeed, without inspection, a party almost invariably would be unable to determine whether he has a potentially meritorious jury chal-

lenge. Thus, an unqualified right to inspection is required....

420 U.S. at 30, 95 S.Ct. at 750 (footnotes omitted). Under *Test*, Curry was entitled to inspect, reproduce, and copy the master jury list to support a motion for a new trial based upon a substantial failure to comply with the provisions of 28 U.S.C. §§ 1861–68 ("the Act") in selecting the grand or petit jury.

■ The Government contends that under *United States v. Davenport*, 824 F.2d 1511, 1513–15 (7th Cir.1987), and *United States v. Buckner*, 830 F.2d 102, 104 (7th Cir.1987), Curry is required to submit a sworn affidavit showing why the list would be necessary. These cases are distinguishable. In *Davenport*, the Seventh Circuit noted that under *Test* a defendant had an unqualified right to the jury list, but that § 1867(f) did not entitle him to the juror qualification questionnaires without some demonstration of necessity. 824 F.2d at 1514–15. *Buckner* involved a defendant who, *after* receiving the grand jury composition lists, filed an unsworn motion asserting that the lists were insufficient for analysis. 830 F.2d at 104. The Seventh Circuit held that while a defendant "had a statutory right to data sufficient to assess the composition of the panel," the statute does not automatically permit disclosure of other jury information absent a sworn statement of facts which, if true, would constitute a substantial failure to comply with the Act. *Id.*

Even though the district court erred in denying Curry's request to inspect the master jury list, this error does not necessarily warrant reversal of his conviction. *United States v. Studley*, 783 F.2d 934, 938 (9th Cir.1986). Instead, on remand Curry is entitled to review the jury list and may move for a new trial under 28 U.S.C. § 1867(a). If upon timely motion Curry can demonstrate a violation of the Act which prejudices him, the district court shall grant his motion for a new

---

1. Curry also asserts that the district court abused its discretion in admitting allegedly speculative evidence; that a mistrial should have been granted after a DEA expert improperly testified about Curry's failure to file income tax returns (the jury was instructed to disregard the evidence); that the government's videotaping of his meeting with the consent of a government informant violated his Fourth Amendment rights; and that the district court should have granted his request to compel the government to grant use immunity to a defense witness. We find these assertions to be without merit.

trial. *Id. See also United States v. Beaty,* 465 F.2d 1376, 1382 (9th Cir.1972).

## II.

■ During Curry's cross-examination of Arthur Watson, Curry's counsel asked him when he last dealt drugs prior to his arrest.[2] Rather than respond to this question, Watson invoked the Fifth Amendment. After Watson was excused, Curry's counsel moved to strike the testimony on the ground that Curry was denied his constitutional right under the Sixth Amendment to confront this witness. We review the district court's refusal to strike Watson's testimony for abuse of discretion. *United States v. Zapata,* 871 F.2d 616, 624 (7th Cir.1989).

■ The primary case relied on by Curry is *Lawson v. Murray,* 837 F.2d 653 (4th Cir.), *cert. denied,* 488 U.S. 831, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988). In *Lawson,* the magistrate judge granted habeas relief because the trial court had stricken the testimony of a defense witness who invoked the Fifth Amendment during cross-examination. *Id.* at 655. We reversed. In so doing we stated that "[w]hen a prosecution witness cuts off cross-examination by invoking the fifth amendment privilege against self-incrimination, the criminal defendant's constitutional right of confrontation is directly implicated." *Id.* at 655. Nevertheless, striking the entire testimony is a drastic remedy and is not to be lightly done. *Id.* at 656. In fact no action at all might be appropriate, or the court might strike only a portion of the testimony, if the fifth amendment privilege was invoked "to avoid cross-examination on purely collateral matters." *Id.* Striking all of the testimony might be the only appropriate remedy, however, if the refusal to answer frustrates the defendant's ability "to test the credibility of the witness and the truthfulness of his earlier testimony." *Id.*

Striking Watson's testimony was not warranted in this case because he only invoked his Fifth Amendment rights with respect to his recent drug activities, which is a collateral matter. *See United States v. Humphrey,* 696 F.2d 72, 75 (8th Cir.1982), *cert. denied,*

459 U.S. 1222, 103 S.Ct. 1230, 75 L.Ed.2d 463 (1983) (evidence concerning crimes other than those charged related to the credibility of the witness and is a collateral matter). In addition, Curry was not prejudiced by the refusal to answer this question because Watson admitted in his direct testimony that he had been involved in prior drug deals.

## III.

Curry also contends that the Government engaged in improper bolstering and vouching for the credibility of its witnesses during closing argument. The statement with which Curry takes issue was made at the beginning of the Government's rebuttal argument. The prosecutor began by saying that defense counsel had suggested that the United States and DEA agent Pat Dunn, "a man who puts his life ... on the line every day," would solicit perjury from witnesses. (Tr. at 522–23.) The prosecutor went on to describe such a suggestion as an insult to the United States and an insult to the DEA. At this point, Curry's counsel objected that the prosecutor's statement was a mischaracterization of defense arguments. The objection was overruled. Curry's counsel then moved for a mistrial based on the impropriety of the prosecutor's rebuttal argument. The motion for mistrial was denied.

■ According to *United States v. Chorman,* 910 F.2d 102, 113 (4th Cir.1990), "reversible prosecutorial misconduct generally has two components: that (1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." (Internal quotations omitted.) In *United States v. Harrison,* 716 F.2d 1050, 1052 (4th Cir.1983), *cert. denied* 466 U.S. 972, 104 S.Ct. 2345, 80 L.Ed.2d 819 (1984), we held that several factors are relevant on the issue of prejudice: (1) the degree to which the remarks tended to mislead the jury or prejudice the accused; (2) whether the remarks were isolated or extensive; (3) the strength of the evidence supporting guilt in the absence of the re-

---

**2.** Watson testified for the Government pursuant   to a plea agreement.

marks; and (4) whether the remarks were deliberately placed in front of the jury to divert attention to extraneous matters.

Curry contends that the comments were prejudicial because they occurred in rebuttal argument, the last argument the jury heard before deliberation and to which Curry had no opportunity to respond. Curry also argues that the comments were not invited by defense argument. In closing argument the defense attacked the credibility and truthfulness of government witnesses but did not accuse the government or the DEA of telling them to lie. In addition to the improper bolstering and vouching aspect of the statements, Curry contends that the reference to Agent Dunn "putting his life on the line every day" was not supported by any evidence at trial and invited the jury to convict for the safety of society, which is improper under *United States v. Garza,* 608 F.2d 659, 663 (5th Cir.1979).

Even if the prosecutor's remarks were inappropriate and not in response to defense arguments, Curry has not demonstrated prejudice under the four *Harrison* factors. The remarks were isolated, they were not intentional, there was overwhelming evidence of guilt, and the Government had a compelling case against Curry. *See Harrison,* 716 F.2d at 1052. Accordingly, the denial of Curry's motion for a mistrial was proper.

### IV.

We reject Curry's challenges to his conviction and affirm. We reverse the denial of his motion to review the grand jury list and remand to the district court as provided above.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**