**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

BERNARD TROY CELESTINE, a/k/a
Beaver, a/k/a Speed,
  *Defendant-Appellant.*

No. 97-4219

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

BARKLEY GARDNER, a/k/a Black Dog,
  *Defendant-Appellant.*

No. 97-4220

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

DUSHAWN LEVERT GARDNER, a/k/a
Shawn, a/k/a Black, a/k/a Michael
Archer,
  *Defendant-Appellant.*

No. 97-4221

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

              v.

RANDOLF MOORE, a/k/a Booney,
a/k/a Randy,
                    *Defendant-Appellant.*

No. 97-4238

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

              v.

DUSHAWN LEVERT GARDNER, a/k/a
Shawn, a/k/a Black, a/k/a Michael
Archer,
                    *Defendant-Appellant.*

No. 98-4222

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Malcolm J. Howard, District Judge.
(CR-95-41-H)

Argued: June 3, 2002

Decided: August 9, 2002

Before WIDENER and TRAXLER, Circuit Judges, and
Joseph R. GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Thomas Norman Cochran, Assistant Federal Public Defender, Greensboro, North Carolina, for Appellant Barkley Gardner; Wayne James Payne, Shallotte, North Carolina, for Appellant Dushawn Gardner; Joseph Michael McGuinness, Elizabethtown, North Carolina, for Appellant Moore; Joseph L. Bell, Jr., Rocky Mount, North Carolina, for Appellant Celestine. John Eric Evenson, II, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** John Stuart Bruce, United States Attorney, Anne M. Hayes, Assistant United States Attorney, J. Frank Bradsher, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Following a month-long trial, appellants were convicted of violating the federal Racketeer Influenced and Corrupt Organizations statute, 18 U.S.C. § 1962 (1995) (RICO), by promoting an interstate drug ring, of conspiracy to commit that offense in violation of 18 U.S.C. § 1962(d), and of narcotics conspiracy in violation of 21 U.S.C. § 846 (1995). Individual appellants also were convicted of murder in aid of racketeering and aiding and abetting in violation of 18 U.S.C. §§ 2 & 1959(a)(1) (1995), conspiracy to murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5), carjacking resulting in death in violation of 18 U.S.C. §§ 2 & 2119(3) (1995), using and carrying a firearm to further a crime of violence causing death in violation of 18 U.S.C. §§ 2 & 924(i) (1994), conspiracy to kidnap in violation of 18 U.S.C. § 1201(c) (1995), and kidnaping resulting in death in violation of 18 U.S.C. §§ 2 & 1201(a)(1). On appeal, they contend that various trial errors, including evidentiary rulings, improper jury instructions,

and improper prosecutorial comments during closing arguments, mandate a reversal of their convictions. The court finds no prejudicial error in the jury instructions, admission of hearsay statements, or denial of appellant Randolf Moore's request to proceed *pro se*. There is substantial evidence to support the appellants' convictions, and their sentences do not violate *Apprendi*. Accordingly, we affirm the convictions.

I.

In 1993, a large drug-trafficking enterprise began doing business in North Carolina and New York and later extended its activities into Maryland. The group began in Brooklyn, where many of the members grew up together and sold drugs on Brooklyn's Argyle Street.

Various group members made periodic trips back and forth from New York where they bought drugs, to North Carolina where they sold drugs. Friends and girlfriends assisted by allowing the group's car titles, insurance, and telephone accounts to be put in their names, and by renting apartments which were used for selling drugs and for storing guns, drugs, and money.

In 1994, an independent third party named Bam Bam Ellis shot Tremayne Hubbard, an associate of the drug enterprise. Appellant Dushawn Gardner and enterprise member Lamont Fleming attempted to get revenge on Ellis, but they shot the wrong person. Gardner and Fleming attempted several more times to kill Ellis but were never successful.

In 1995, enterprise members Jack Washington and Brian Linton killed a friend of the group's from Brooklyn, Joseph Brooks. Washington told other members of the group that an independent drug dealer, Lateisha Beaman, had hired him to kill Brooks. Other associates then began plotting to kill Beaman in retaliation, and arranged a phony drug deal to trick her into meeting them. After meeting her, associate members returned with her to an apartment, where appellants Dushawn and Barkley Gardner, Randolf Moore, and additional associates were waiting. They car-jacked her, took her to a rural, wooded area, and shot her. They buried the weapons. Group member

Lamont Fleming eventually killed Washington in retaliation, and again the group buried the weapon.

Roneka Jackson was a sometimes girlfriend of appellant Dushawn Gardner and a mother of one of his children. She occasionally sold drugs for the group and was involved in the details of its operations. In August 1995, Dushawn and Barkley Gardner asked her to help them get Dushawn's van to New York. They were avoiding authorities in North Carolina who were investigating the group's criminal activities, and they wanted to return to New York undetected. Appellant Bernard Celestine then suggested that while they were staying away from North Carolina, they could sell drugs in Baltimore for a while to make money. Celestine, Jackson, and Dushawn Gardner spent several days there before returning to New York for more drugs. They made several trips between Baltimore and New York.

During that time, Jackson phoned her mother and said that she was in New York with Dushawn Gardner. Jackson later reported to her mother and to a detective with whom she had worked in the past that she had gone to New York with the Gardners and Celestine because she was promised a car, new clothes, and money for her own apartment in exchange for her assistance. She said she wanted to leave but that the group was watching her and following her to the bathroom with a gun at her back, and that she did not have enough money to get home to North Carolina. When the group was in Baltimore again, she got away and a friend paid for her to stay in a motel for two nights. Dushawn Gardner and Celestine tracked her down, removed her from the motel room at gunpoint, and returned to New York where they decided to kill her. Because they could not find a gun, they broke her neck, doused her with gasoline, and lit her on fire. All the while, she pleaded for mercy and promised not to tell.

Key enterprise members were arrested shortly thereafter. Some members of the conspiracy plead guilty and testified against the others. The remaining defendants went to trial in 1996, and were convicted on most counts charged.

## II.   *Jury Instructions*

First, appellants allege several errors in the jury instructions. They argue that the district court improperly instructed the jury regarding

the elements of a RICO offense and regarding the law on the other conspiracy counts. We review the district court's jury instructions in their entirety, and focus on whether the district court instructed the jury regarding the elements of the offense and the defendant's defenses. *See United States v. Wilson*, 198 F.3d 467, 469 (4th Cir. 1999). Where appellants properly object, the specific formulation of instructions is reviewed for abuse of discretion. *United States v. Helem*, 186 F.3d 449, 454 (4th Cir. 1999). Where an objection is not preserved, review is for plain error. *United States v. Nicolaou*, 180 F.3d 565, 569 (4th Cir. 1999).

## A.

RICO requires the Government to prove "a pattern of racketeering activity." 18 U.S.C. § 1962(c). To do so, it must establish that at least two predicate acts are related, and that the acts amount to, or otherwise constitute, a threat of continuing racketeering activity. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240-42 (1989). The continuity in combination with the relationship produces the pattern required under the statute. *Id.* at 239.

Appellants argue that the district court failed to instruct the jury that the government was required to prove beyond a reasonable doubt that the racketeering acts charged in the indictment were both horizontally related and vertically related. Their objection to this instruction was properly preserved, and so will be reviewed for abuse of discretion. *See* J.A. 2441. The court finds that the instructions adequately convey the meaning of both terms.[1] The "third" point covers

---

[1]The district court's instruction on the RICO count included, in relevant part:

> The term "pattern of racketeering activity" requires at least two acts of "racketeering activity," sometimes called predicate offenses, which must have been committed within 10 years of each other, within a space of 10 years from the start to the finish, one of which must have occurred after October 1, 1970 . . . . So in order to establish that the Defendants named in Count One of the indictment, or any one of them you may be considering, committed the offense charged in Count One, there are five specific acts which must be proved beyond a reasonable doubt:

horizontal relatedness by requiring the jury to find that the acts are related to each other. The "fourth" point requires the acts to be related to the criminal enterprise and thus covers the vertical element. This instruction satisfies the requirements of *H.J. Inc.*

The Government concedes that the instruction failed to specifically refer to the continuity requirement that a defendant's racketeering acts amount to, or threaten, the likelihood of continued criminal activity. *See H.J. Inc.*, 492 U.S. at 240-42. It contends, however, that continuity is not, strictly speaking, an element of a RICO offense, but is instead characteristic of the evidence used to prove the broader pattern element. The Government cites *United States v. Boylan*, in which the First Circuit held that where an instruction "adequately invinced [sic] the concept that continuity requires 'a series of related predicate extending over a substantial period of time,' reflective of a 'regular way' of conducting the enterprise's affairs," it was not plain error to fail to mention "continuity" as an element of proving racketeering activity. *United States v. Boylan*, 898 F.2d 230, 250-51 (1st Cir. 1990). The Government overstates the holding of *Boylan*. While *Boylan* states in dicta that "continuity is not an element of a RICO offense, *stricto senso*," the court still required the instructions to reflect the concept of continuity. 898 F.2d at 250-51.

---

. . . Third: That the two predicate offenses, the two racketeering acts allegedly committed by the Defendant were connected with each other by some common scheme, plan, or motive, so as to be a pattern of criminal activity, and not merely a series of separate, isolated, or disconnected acts.

Fourth: That through the commission of the two or more connected offenses, the racketeering acts, the Defendant conducted or participated in the conduct of the enterprise's affairs. . . .

. . . . You are further instructed that you must unanimously agree, that is, all 12 of you in your deliberations must agree concerning each Defendant under consideration, as to which of the two predicate offenses, the acts of racketeering he committed. . . . You must all agree upon the same two predicate offenses, in order to find a particular Defendant guilty of Count One.

J.A. 2023-26.

To satisfy the requirements of *H.J. Inc.*, the jury instruction at least must incorporate the concept of continuity. *See H.J. Inc.*, 492 U.S. at 240-42. The court finds that the instant instruction does so. The Eleventh Circuit approved an almost identical instruction which failed to specifically mention continuity, but stated that there must be a pattern of activity and not just a series of separate isolated or disconnected acts. *See United States v. Kotvas*, 941 F.2d 1141, 1144-45 (11th Cir. 1991). Here, the jury was instructed that the acts had to be "connected with each other by some common scheme, plan or motive so as to be a pattern of activity, and not merely a series of separate, isolated, or disconnected acts." The term "pattern" requires a showing of the threat of continuing activity. *See Kotvas*, 941 F.2d at 1144-45. Thus by requiring the jury to find a pattern of activity, and not just isolated acts, the district court instructed the jury on continuity. *See id.* Moreover, the defendants' proposed jury instructions do not contain any greater elaboration on the continuity requirement than the instruction given by the district court.[2] The court therefore finds that the district court did not abuse its discretion in instructing the jury on this count.

## B.

Racketeering Acts Two A, Three A, and Four A in the RICO count alleged conspiracy to commit murder and murder in violation of N.C. Gen. Stat. § 14-17 (2002). Appellants argue that the district court failed to instruct the jury on the North Carolina definitions of conspiracy and murder.

On the instruction for the first racketeering act of the narcotics conspiracy, the district court stated, "I will instruct you on the definition and elements of conspiracy later in these instructions." J.A. 2028. It then did so four times: on Count Two (RICO conspiracy), Count Three (narcotics conspiracy); Counts Four and Eight (murder conspiracy), and Count Ten (kidnaping conspiracy). J.A. 2037-38; 2046-47; 2050-51; & 2063-64. The district court also gave a long instruction on the definition of murder under North Carolina law. J.A. 2052-54.

---

[2]The proposed instruction stated only that the jury must find beyond a reasonable doubt that "each defendant participated in the affairs of the Enterprise through a pattern of Racketeering activity as described in the Indictment through the knowing and willful or deliberate commission of at least two Racketeering acts within ten years of each other." J.A. 1909.

These instructions do not omit any element required by North Carolina law. The court finds that the district court did not abuse its discretion in formulating these instructions.

C.

For first degree kidnaping, North Carolina law requires a jury to find beyond a reasonable doubt that a felony was committed prior to the kidnaping. Defendants requested an instruction that read, in relevant part:

> You may not find that [the defendants] committed racketeering act 5A, unless you first find that the Government has proved beyond a reasonable doubt each of the following essential elements: 1. On or about between August 16, 1995 and September 23, 1995, two or more persons reached an agreement to kidnap Roneka Jackson for the purpose of facilitating the flight of [defendants] following the commission of a felony, that being narcotics trafficking.

J.A. 1944. The district court told the jury that the Government had to prove, "that the Defendant removed [a person] for the purpose of facilitating his or another person's flight after committing a narcotics trafficking crime." J.A. 2032. Appellants now argue that a "narcotics trafficking crime" does not constitute a "specifically defined felony" as required by North Carolina law. According to them, narcotics trafficking is not a crime that exists under North Carolina law.

The invited error doctrine prevents a criminal defendant from complaining of error which he himself has invited. *United States v. Herrera*, 23 F.3d 74, 75 (4th Cir. 1994). Because the district court used the language suggested by the defendants, they cannot now claim error based on that very phrasing. *Id*. Moreover, many North Carolina statutes refer specifically to "narcotics trafficking crimes." *See, e.g.*, N.C. Gen. Stat. §§ 148-4.1(a) (2002); 15A-533(d)(2) (2002); 15A-290(a)(1)a (2002). For those reasons, the court finds that the district court did not abuse its discretion in formulating this instruction.

Appellants also argue that the instructions on multiple states' kidnaping laws allowed the jury to convict them of a crime that does not

exist, because they could evaluate the conduct in one state under the elements for proof required by the law of a different state. This argument is without merit, however, because the district court clearly and thoroughly discussed each state's kidnaping law and told the jury, "You must unanimously agree as to which state, and the elements under that state." J.A. 2032.

### D.

Counts Four, Five, and Eight charged murder and murder conspiracy in violation of 18 U.S.C. § 1959 (1995). To prove a violation of this statute, the Government had to prove 1) that the organization was a RICO enterprise; 2) that the enterprise was engaged in racketeering activity as defined by RICO; 3) that the defendant has a position in the enterprise; 4) that the defendant had committed the alleged crime of violence; and 5) that his general purpose in so doing was to maintain or increase his position in the enterprise. *United States v. Fiel*, 35 F.3d 997, 1003 (4th Cir. 1994).

Appellants argue that the judge failed to instruct as to the third and fifth *Fiel* elements — that the defendant had a position in the enterprise and that the purpose in committing the crime of violence was to maintain or increase his position in the enterprise.[3] Because defen-

---

[3]The district court instructed the jury:

The law is the same on both Count Four and Eight; so I will only explain it one time. Count Four, now, in the indictment, charges [the Gardners and Moore] with conspiring to murder Lateisha Beaman in order to maintain and increase their position in a "criminal enterprise,["], as that term was explained in Count One. Count Eight charges Dushawn Gardner and Randolf Moore only with violating federal law by conspiring to murder Jack Washington in order to maintain and increase their position in a criminal enterprise.

Title 18, United States Code, Section 1959, makes it a separate federal crime for anyone to attempt or to conspire to commit murder in violation of state or federal law, in an effort to gain entrance to or maintain or increase their [sic] position in an enterprise engaged in racketeering activity. To determine

dants did not object to the instructions on these counts, they are reviewable only for plain error. *United States v. Olano*, 507 U.S. 725, 731 (1993).

The jury found that the defendants committed RICO offenses. They could not have so decided without finding that the defendants were involved in the enterprise. For those reasons, the court finds that there was no plain error in this instruction.

### III. *Sufficiency of Evidence*

The appellants next argue that there is insufficient evidence to support their convictions on Counts One, Two, and Three. Appellant

---

whether an enterprise existed which engaged in racketeering activity, you are to apply the same meaning to those terms, as I explained in more detail in Count One.

J.A. 2048-49. The court then instructed the jury on the specific offense charged in Counts Four and Eight.

On Count Five, the district court told the jury:

Count Five charges [both the Gardners and Moore], together with others, with violating [18 U.S.C. § 1959], a federal law, by murdering Lateisha Beaman and/or aiding and abetting each other in so doing, in order to gain entrance to and maintain and increase their position in a criminal enterprise as that term was explained to you in Count One. . . . In order to prove that the Defendant violated this section, you must find the Government has proved beyond a reasonable doubt, the following three things, as to Count Five: First, that each of the defendants charged in this count intentionally and with malice killed Lateisha Beaman. . . . Second, that the Defendant then under consideration, that Defendant's acts were a proximate cause of the victim's death. And I tell you that a proximate cause is a real cause, a cause without which the victim's death would not have occurred. That's the meaning of proximate cause. Third and final, that the defendant intended — the defendant then under consideration intended to kill Lateisha Beaman, the victim.

J.A. 2052-54. The court repeated the statutory language and again stated, "To determine whether an enterprise existed which engaged in racketeering activity, you are to apply the same meaning to those terms as I have previously defined them." *Id.*

Barkley Gardner also challenges the evidence on his convictions on Counts Four, Five, Six, and Seven. In determining whether the evidence was sufficient to prove the offense charged, we must consider — viewing the evidence in the light most favorable to the Government — whether any rational trier of fact could find guilt beyond a reasonable doubt. *United States v. Rahman*, 83 F.3d 89, 93 (4th Cir. 1996).

### A.

Appellants claim that the Government failed to prove 1) that racketeering acts two, three, and four were related horizontally to one another and vertically to the enterprise, and 2) that it failed to link any defendant to the attempt to murder Ellis or to any of the other murders for the purposes of furthering the goals of the enterprise. According to them, the plan to kill Ellis was a manhood test for Tremayne Hubbard or revenge for the attempt Ellis had made on Hubbard's life; Beaman's murder was revenge for the killing of Brooks. Thus neither murder, they claim, was related to the criminal enterprise.

The Government's theory at trial was that the violence related to and served the purposes of the enterprise. The Government presented evidence that 1) various members of the enterprise had attempted to kill Ellis; 2) Hubbard sold drugs in Durham, North Carolina, as did Ellis; 3) Ellis shot and tried to kill Hubbard; 4) the group's attempts to kill Ellis in retaliation perpetuated its reputation in the community for violence and strengthened the bonds of loyalty and duty among members of the enterprise. It also presented evidence that 1) Beaman was an independent drug dealer who hired enterprise members Jack Washington and Brian Linton to murder Brooks, a Brooklyn associate of enterprise members; 2) Washington and Linton murdered Brooks, setting in motion the chain of events that led to the murders of Beaman and Washington and the attempted murder of Linton. One witness, for example, testified that Washington was killed "for the cause." J.A. 875. This evidence tends to show the domino effect of each act of violence. We find that there is enough substantial evidence on this count to sustain appellants' convictions.

Next, appellants claim that the convictions must be reversed because it is impossible to tell if the jury based its conviction on at

least two permissible racketeering acts. They cite *Yates v. United States*, 354 U.S. 298 (1957), for this proposition. In *Yates*, the general verdict was supportable on one ground, but invalid on an alternate ground because of constitutional limitations. *Id*. at 310. Because it was impossible to tell on which ground the verdict was based, the Court held that it must be set aside. *Id*. As *Griffin v. United States* made clear, however, *Yates* stands only for the proposition that where a provision of the Constitution forbids conviction on a particular ground, the constitutional guarantee is violated by a general verdict that may have rested on the same ground. 502 U.S. 46, 53 (1992). When a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, the verdict stands if the evidence is sufficient with respect to any one of the acts charged. *Id*. at 56-57. Here, the district court instructed the jury that it had to "unanimously agree . . . as to which of the two predicate offenses, the acts of racketeering he committed . . . You must all agree on the same two predicate offenses." J.A. 2026. The instant indictment charged eight racketeering acts. The jury thus could have returned guilty verdicts based on any two acts, as long as they agreed on which two. Their verdict is not defective because appellants can not determine on which acts they were being convicted. *See Griffin*, 502 U.S. at 53.

Appellants also argue that the Government did not prove the existence of a single conspiracy, rather than proving only multiple smaller conspiracies. A single conspiracy exists when there is one overall agreement. *United States v. Leavis*, 853 F.2d 215, 218 (4th Cir. 1988). Whether there are multiple conspiracies or a single conspiracy depends on the overlap of key actors, methods, and goals. *Id*. A defendant can be involved in a conspiracy without being involved in every phase of that conspiracy. *Id*. Indeed, a defendant can be convicted of conspiracy if the evidence shows his participation in only one level. *United States v. Johnson*, 54 F.3d 1150, 1154 (4th Cir. 1995).

The court finds that there is substantial evidence that a single conspiracy existed. The common goal was selling drugs for profit. Common actors were the Flemings and the Gardners, who all helped establish the North Carolina operations and then led the retreat back to New York, and the expansion into Maryland. Common methods were traveling by car from North Carolina to New York to buy drugs,

using proxies to rent apartments and hotel rooms from which to distribute drugs, using alias names when confronted by police, and using violence to intimidate and create loyalty.

## B.

Appellant Barkley Gardner argues that there is insufficient evidence relating him to the death of Beaman. The Government, however, presented evidence that Barkley helped hatch the plan to kill Beaman, and then later looked for Beaman's car keys so he and the other associates could transport her elsewhere. J.A. 488-90; 630. When she tried to run away, Barkley Gardner helped force her back in the car. J.A. 629. Although it appears he did not participate in every stage of the venture, evidence of his involvement is more than enough to sustain his conviction.

## IV.   *Admission of Hearsay Statements*

Appellants argue that the district court improperly admitted hearsay statements that Jackson made to various people on the phone during her kidnaping and before her murder. The district court admitted the statements pursuant to a "host of bases," specifically including *Fed. R. Evid.* 803(3) (then existing mental, physical or emotional condition) and 804(b)(5)[4] (statement more probative than other evidence procurable through reasonable efforts). J.A. 1287. We review evidentiary decisions by the district court for an abuse of discretion. *United States v. Robinson*, 275 F.3d 371, 382 (4th Cir. 2002).

The Government points out that these hearsay statements are now admissible under the new Rule 804(b)(6) (forfeiture by wrongdoing), which codifies then-existing common law. *See Fed. R. Evid.* 804(b)(6) advisory committee's note. The common-law doctrine of forfeiture by misconduct held that where a party's deliberate wrongdoing or acquiescence thereto procured the unavailability of a hearsay declarant as a witness, he forfeits the right to object on hearsay grounds to the admission of the declarant's prior statement. At the time of the trial, every circuit that had addressed the issue recognized

---

[4]This provision is now combined with former Rule 803(24) in Rule 807.

the doctrine. *See, e.g., United States v. Houlihan*, 92 F.3d 1271, 1280 (1st Cir. 1996); *United States v. Aguiar*, 975 F.2d 45, 47 (2d Cir. 1992); *United States v. Thevis*, 665 F.2d 616, 631 (5th Cir. 1982); *Steele v. Taylor*, 684 F.2d 1193, 1202 (6th Cir. 1982); *United States v. Balano*, 618 F.2d 624, 629 (10th Cir. 1980); *United States v. Carlson*, 547 F.2d 1346, 1358-59 (8th Cir. 1976). The circuits adopted varying tests for determining whether a forfeiture had occurred. Some applied a clear and convincing evidence standard. *See, e.g., Thevis*, 684 F.2d at 630. Others used a preponderance of the evidence analysis. *See, e.g., Houlihan*, 92 F.3d at 1280.

The evidence surrounding Jackson's death indicates that she was killed to prevent her from talking. As her killers tried to break her neck, she screamed, "I'm not going to tell, I'm not going to tell." J.A. 1706. Under either a clear and convincing standard or a preponderance standard, we cannot say the district court abused its discretion in admitting the statements under the waiver-by-wrongdoing doctrine.

The court finds that the statements also were admissible under Rule 804(b)(5) because circumstantial guarantees of trustworthiness were present. *See United States v. Clarke*, 2 F.3d 81, 84 (4th Cir. 1993). Jackson made consistent statements regarding her kidnaping to her mother and to a police detective, who took contemporaneous notes during each conversation. Many of the calls were substantiated by telephone records and by the testimony of other witnesses. There appears to be no motive for Jackson to have lied, nor have appellants identified one. The district court did not abuse its discretion in admitting these statements.

V.   *Prosecutorial Comments During Closing Arguments*

Appellants argue that in closing arguments, the prosecutor made improper and prejudicial comments which deprived them of a fair trial. Remarks by a prosecutor can constitute grounds for reversal where 1) the remarks were improper, and 2) the remarks so prejudicially affected the defendant's substantial rights so as to deprive him of a fair trial. *United States v. Curry*, 993 F.2d 43, 45 (4th Cir. 1993). Put another way, improper argument by the prosecutor is not grounds for reversal unless there is substantial prejudice as well as error. *United States v. Whitehead*, 618 F.2d 523, 528 (4th Cir. 1980). To

determine whether the remarks were prejudicial, this court looks to 1) the degree to which the remarks tended to mislead the jury or prejudice the accused; 2) whether the remarks were isolated or extensive; 3) the strength of the evidence supporting guilt in the absence of the remarks; and 4) whether the remarks were deliberately placed in front of the jury to divert attention to extraneous matters. *Curry*, 993 F.3d at 45-46. It also considers 5) whether the prosecutor's remarks were invited by improper conduct of defense counsel, and 6) whether curative instructions were given to the jury. *United States v. Wilson*, 135 F.3d 291, 299 (4th Cir. 1998). These factors are examined in the context of the entire trial, and no one factor is dispositive. *Id.*

The court finds that none of the prosecutor's remarks were improper. Appellant Randolf Moore first complains about comments on his credibility:

> You need to watch and listen to him. Why? Because he's got an interest in this lawsuit. And I contend to you because he's got an interest, and he so much as told you without realizing it, he'll come up here and tell you any type of cooked-up, trumped-up, cock-and-bull story hoping you're naive enough to believe it, so he can walk out those doors and avoid the consequences of his criminal conduct. You watched him up there. . . . Well, ladies and gentlemen of the jury, I'll tell you one of biggest lies there is and that's a half-truth. And do you know what Randy Moore has shown throughout this racketeering enterprise? He is a master at telling half the truth.

J.A. 2305-07. A prosecutor may not directly express his opinion as to the veracity of a witness, but he may stress the inconsistencies and improbabilities in a witness's testimony. *United States v. Moore*, 710 F.2d 157, 159 (4th Cir. 1983). Moore had admitted numerous times during his testimony that he had lied. The prosecutor's remarks serve to highlight these admissions and to cast doubt on his credibility. The remarks were prefaced by "I contend to you," which indicates routine argument, and not the expression of the prosecutor's personal opinion of Moore as a man or as a witness. The court finds nothing improper about these remarks, and thus need not reach the next step of the *Curry* inquiry.

Appellants next complain that the prosecutor improperly vouched for government witnesses:

> I argue to you, we corroborated virtually every major piece of evidence in this case. Why? So you wouldn't have to worry about that. So you wouldn't have to lose any sleep over this. Even Randy Moore told you — and he thought he was fooling you, I contend to you, the witnesses told you the truth.

J.A. at 2308.

It is impermissible for a prosecutor to vouch for or bolster the testimony of government witnesses during arguments to the jury. *United States v. Sanchez*, 118 F.3d 192, 198 (4th Cir. 1997). The court finds, however, that these comments do not constitute vouching. Vouching occurs when a prosecutor indicates a personal belief in the credibility or honesty of the witness. *Id*. Here, the prosecutor prefaced his comments with the phrases, "I argue to you" and "I contend to you." His comments were argument, and not indication of a personal belief. As such, they were proper.

Finally, appellants argue that the prosecutor made two improper attacks on defense counsel during rebuttal. First, he said, "I would argue to you that based on what [defense counsel] argued to you here today, that perhaps some of them weren't sitting in the same courtroom that you and I were." J.A. 2298. He also stated

> And they talk about the Government parading witnesses in here and trying to get you in a conviction mood. Well, you know what? The last I looked, there was a Judge sitting in this courtroom. Do you think this Judge has lost control to the point we're getting you in some kind of conviction mood?

J.A. 2307. Counsel may not make unfounded and inflammatory attacks on the opposing advocate. *United States v. Young*, 470 U.S. 1, 8 (1985). The instant statements, however, are not the sort of blatant personal attack contemplated by the Court in *Young*.[5] Instead,

---

[5]*Young* dealt with the prosecutor's remark, "I don't know whether you call it honor and integrity, I don't call it that, [defense counsel] does,"

they are rhetorical devices of the kind employed routinely in court-rooms across the country. The court finds nothing improper about those remarks.

## VI.  *Remaining Issues*

The remaining claims may be briefly addressed. Appellant Moore complains of the district court's refusal to honor his request to represent himself. The assertion of the Sixth Amendment right to represent onself must be 1) clear and unequivocal; and 2) knowing, intelligent, and voluntary. *United States v. Frazier-El*, 204 F.3d 553, 558 (4th Cir. 2000). The right is not absolute, and can be waived by failure to timely assert it, or by subsequent conduct giving the appearance of uncertainty. *United States v. Singleton*, 107 F.3d 1091, 1096 (4th Cir. 1997). Thus, if a defendant proceeds to trial and asserts his right to self-representation only after the trial has begun, he may have waived that right, and the exercise of the right may be denied, limited, or conditioned. *Id*. The record here does not reflect a timely request to proceed *pro se*, and Moore agreed during trial that his attorney would ask questions. For those reasons, we find that the district court did not abuse its discretion in denying Moore's request to proceed *pro se*.

Finally, appellants argue that their life sentences on Count Three violate *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because drug quantity was neither specified in the indictment nor submitted to the jury. Because they failed to raise this issue before the district court, we review for plain error. *See Olano*, 507 U.S. at 731-32. Although appellants' convictions on this count subjected them to a maximum statutory penalty of 20 years, each received a life sentence. This was plain error. *See United States v. Promise*, 255 F.3d 150, 156-57 (4th Cir. 2001). We may notice this error only if appellants demonstrate that it substantially affected their substantial rights. *See Olano*, 507 U.S. at 732. Because defendants all received life sentences on other counts which are to run concurrently, they cannot demonstrate that their substantial rights were affected. *See United States v. Hastings*,

---

and the defense counsel's response that, "I submit to you that there's not a person in this courtroom including those sitting at [prosecutor's] table who think Billy Young intended to defraud Apco." 470 U.S. at 4-5.

134 F.3d 235, 240 (4th Cir. 1998). Accordingly, we reject appellants' *Apprendi* challenge to their convictions.

## *Conclusion*

For the reasons stated above, and because none of the alleged errors, singly or in combination, deprived appellants of a fair trial, the convictions are

*AFFIRMED*.